## WRIGHT ET AL V. MORRIS.

1. TOLL BRIDGE: *Avoiding tolls by crossing elsewhere: Obstructing highway.*

Appellant by license from the County Court erected a toll bridge at the crossing of a stream by the public road, and to prevent parties from crossing the stream at a ford where the old public road through his land crossed it he extended his fence across the old road. Defendant pulled down the fence and crossed at the ford and induced others to do likewise. The old road had never been

13——43

vacated by the County Court. Plaintiff sued the defendant for travelling the old road across his lands and tearing down his fences, and also for inducing others to avoid paying tolls at the bridge. HELD : That the road not being vacated the defendant had the right to travel it and to remove the obstructions, provided he did no wrongful act to make him a trespasser *ab initio* : 2. A party is not liable for damages for avoiding a toll bridge and the payment of tolls by crossing eleswhere, or for inducing others to do likewise.

APPEAL from *Sebastian* Circuit Court.

Hon. R. B. RUTHERFORD, Circuit Judge.

*Rogers & Read* for appellants.

It was error to exclude the charter. For the nature and character of these special privileges of franchises see *Kents Com. 3d Vol. Marg. p.* 458, ( 12 *Ed.*).

The County Court had jurisdiction to grant the franchise, and no *informality* in its order vitiated its action, or subjected it to collateral attack. *Const. Art.* 7. *Sec,* 28; *Acts* 1874-5 *p.* 242 ; 33 *Ark.* 191 ; 36 *Ib* 641 *and* 467 ; 19 *Ib.* 561. The power to hear and determine a cause is jurisdiction, 34 *Ark.* 105; 6 *Pet.* 709 ; *Cooley Const. Leni.* 398.

If the toll gate, was, as to the defendant, *no* obstruction, he being allowed to cross free, he could not be justified in law, in trespassing on plaintiffs' lands, because of the existence of the toll gate. Even if plaintiffs did obstruct the highway every day, this did not justify defendant in doing unlawful acts, or mitigate damages. When one erects a fence across a public highway, the act though unlawful, will not justify one in " destroying " the fence. He may *remove* but not destroy as by burning or chopping to pieces.

*Clendenning & Sandels* also for appellants.

*Duval & Cravens* for appellee.

Wright et al v. Morris.

The County Court had no authority to make such a contract and the charter was void, and correctly excluded. *Acts 74-5 p.* 242, *repealing secs* 638 *to* 645 *Gantts Dig.* A county has only specific powers, and where the Legislature points out one or prescribes the mode of the performance of its granted powers it is bound to observe them. 2 *Kans.* 115; 26 *Ark.* 454; 5 *Gratt.* 241; 92 *U. S.* 307.

Grants of franchises are construed strictly, and cannot be extended by intendment or construction. *Cooley Const. Leni. 3d Ed.* 394-6; 4 *Pet.* 514; 11 *Ib.* 544; 23 *How.* 462; 17 *Ala.* 576; 8 *How.* 569; 3 *Wall.* 51; 11 *Pet.* 420; 6 *Ib.* 691.

The obstruction by plaintiffs of the highway was a nuisance, and defendant had a right to abate it. *Ward on Nuisances* 763-768, *Secs* 250-256. A highway once established does not cease by non-user, until discontinued by proper authority. *Ib. Sec.* 299.

Anyone may abate a common nuisance. *Blackstone, Book* 3. *p.* 5: *Book* 4 *p.* 167 *notes.*

As to the alteration, vacation and establishing roads, see 12 *Ohio St.* 87; 5 *Ohio* 271; 24 *Ib* ( *St.* ) 60; 12 *Ib.* 635; 3 *Am. Dec.* 635; 35 *Ark.* 497.

EAKIN, J. Appellants sued Morris in two counts. The first premising that the plaintiffs were the owners of a toll bridge over Vache Grasse Creek, duly authorized to take tolls, charged defendant with a disturbance of their franchise, in this; that he had unlawfully and maliciously opened up, and kept open, over the lands of plaintiffs, divers roads and passages, leading to the bed of the creek and across it, in the near vicinity of the bridge, and into the public road; and had passed along said ways, with a gun inducing and guiding divers persons traveling with wagons, buggies, horses &c., to avoid the bridge, and the payment of tolls. Special damages in the loss of tolls are alleged to the extent of $92.70.

The second count is in the nature of *quare clausum fregit*, charging him with having maliciously and forcibly entered the close of plaintiffs, breaking, and tearing down the fence on the premises ; throwing the rails and plank into the creek, burning a portion of the same to the value of ten dollars, driving off the plaintiffs' employes; and other specified enormities.

During the trial the plaintiffs asked leave so to amend their complaint, in accordance with the evidence which had been adduced, as to bring their case within the provisions of sec. 5743, of Gantt's Digest, which gives double damages for voluntarily throwing and leaving open bars, gates, fences &c., of another. This was refused and the plaintiffs excepted.

The jury found for the defendant on the first count, and for the plaintiffs on the second, assessing damages at $15, for which amount, with costs, judgment was rendered. The plaintiffs filed a motion for a new trial which was overruled; they made a bill of exceptions and obtained a grant of an appeal. Defendants filed no application for a new trial nor did they save any exceptions by bill, on their part, but prayed and were granted cross-appeal by this court in session.

The points presented by the motion for a new trial will be taken up seperately, with such additional statements of facts as may be necessary to make the special application of law, as to each, intelligible.

First : The court excluded from the jury a certified transcript from the County Court Records, which was offered to show that plaintiffs had been properly authorized to build a bridge and charge tolls; also to show that the bridge was upon the public highway ; and that the County Court had established the bridge as a part of it. These points were embraced in the first three grounds of the motion.

In considering this it may be well to premise that as to

Wright et al v. Morris.

the first count of the complaint, the verdict and judgment of the court for the defendant on that, would not be disturbed on account of any error on trial. The count is not for a trespass on lands, although it is incidentally stated that de fendant entered and passed over the lands of plaintiffs. But this is not the gravamen of the charge nor was it so intended. The gist of the complaint embodied in this count is for avoidance of tolls, by passing around the bridge, and guiding others around, so that plaintiffs were damaged by diminution of profits. It is a common law count in *case*. A bridge franchise authorizes the collection of tolls from those whose necessity, convenience, or pleasure may induce them to cross it. But it is not like an ancient common law mill to which all the inhabitants of a district were compelled to bring their corn to have it ground and tolled. Any one has the individual right to get across a river as he pleases, at his own risk, or to show others how they may do the same, and even persuade and aid them to do so, if he exacts no compensation. It makes no difference whether he does so from general benevolence, or from some ungracious dislike to the owner of the bridge. If one has an absolute and unqualified right to do a thing, the law cannot inquire into his motives in doing it, or advising others to exercise the same right. He may not trespass in doing it, but in that case he becomes liable for the trespass which is the gist of the second count. The first count shows no cause of action, and the judgment, if proper at all, must be supported by the finding on the second count. The grounds of the motion will be considered with reference to that alone.

The record tendered showed that in April, 1877, the court took up a petition of plaintiff's "with reference to the establishment of a toll bridge over Vache Grasse creek, where the same crosses the Little Rock and Ft. Smith Road in Sebastian county"; that thereupon, the County

by the County Judge, entered into an agreement with plaintiffs in this suit which was reduced to writing and spread on the record. It sets forth that the bridge over said creek where the same crosses said road had been out of repair, and that it was too burdensome on the people of the county to repair and keep it up, by a tax; that the plaintiffs had rebuilt the bridge and had it in repair; and the county was not able to pay for it. The contract went on to state that in consideration of the premises, and that the plaintiffs would, for 20 years keep in good repair said bridge with its abutments and approaches at the point aforesaid, the county "makes and establishes "said bridge across said stream a toll bridge, and gives "and grants the revenues arising therefrom to the said "Wright & Woodruff for the period aforesaid," reserving to the county the right, on payment, to take the bridge at the end of ten years at a valuation by commissioners, and to the contractors the right to remove the same at the end of 20 years if the county, then, should be unwilling to purchase it. There were other mutual agreements not important for notice. After setting forth the agreement the record proceeds to state that the contractors gave bond as required by law which was approved by the court which being fully advised did then ordain and establish rates of toll which are also set forth. This transcript was duly certified. Being offered it was objected on the ground that it only showed a contract with the county, through the County Judge, for which there was no authority in law, and that it did not show any grant of privilege to keep a toll bridge, from the county itself. The court sustained the objection.

By Act of April 3d, 1873, when the functions of the County Court were performed by a Board of Supervisors, said board was authorized to make such a contract as

that above set forth, and to grant the privilege of taking tolls, conditioned to keep the bridge in constant repair, and to take a bond to that effect from the contractor. *Gantt's Dig. Secs.*, 638, 640.

The Board of Supervisors for counties was abolished by the Constitution of 1874, and County Courts under a County Judge, established, with exclusive jurisdiction amongst other things, of roads, ferries and bridges. It was expressly provided that the Court should be a continuation of the Board of Supervisors, and all laws then in force not in conflict with the new Constitution were continued also. See *Schedule to Constitution, Secs.* 1 and 23. By the law as thus left, it would have been the legal mode of granting such a franchise, to do so by a contract between the County Judge, in court, and the grantee ; and by taking bond.

By Act of March 6, 1873, the Sections above cited of Gantt's Digest were repealed, and the County Courts were authorized generally to grant the privilege to any person to build a toll bridge in the county over any water course, &c., where it might be deemed necessary to the public convenience, and too burdensome for taxation. This privilege was made exclusive in so far that the County Court after having once granted it to one person, could not confer it upon another to the injury of the first. It was transmissible by descent or assignment, but was to remain under the general supervision of the court to compel repairs. The court was also required to fix rates of toll. The provisions of the former law regarding the contract and bond are not revived.

It is plain enough in the light afforded by this legislation to see exactly what the court meant to express in the record. It took the old form of a contract with the Judge in behalf of the county which contract was embod-

ied in the order itself; but in substance and effect it is a plain grant of the privilege to complainants to build and keep a toll bridge under circumstances prescribed by the Act.

The County Court has exclusive jurisdiction in such matters. It is a court of record, ranking, within its ambit, as a superior court. All presumptions are in favor of the correctness of its orders. It is a court entrusted by the Constitution to the management of men who are not required to be learned in the law, or versed in technical forms; men who, in fact, are generally selected with more regard to their plain practical·sense, and interest in county affairs, than to their familiarity with forms. It is essential, indeed, that the record upon its face, aided only by the law, should show with reasonable certainty what was done, and that it was something which the court was authorized to do, but that being done, the record is valid, and the order effective. Complainants had, and from all that appears still have the right to maintain the toll bridge, at the place designated and to take the tolls. The record was admissible, and if it were relevant or material on the second count it was error to exclude it from the jury. This leads us to consider the matters at issue on that count. The answer of defendant denies or justifies the trespass and wrongs. It is apparent from the evidence that he did tear down fences of the plaintiffs, and to reach the fords did pass over their lands along old tracts which had been obstructed by complainant; and that at least one of these passages to the fords, had constituted the old highway established by legislative enactment, and which had been generally used until the bridge was built. The only purpose which could have been served by the record offered would have been to show that they had the right to erect and maintain a toll bridge.

Wright et al v. Morris.

Conceding that, it would not give them the right to obstruct the highway leading to the ford. The order does not expressly, nor by any fair implication, vacate so much of the road as passed the ford. The bridge, although at the place was not exactly over either of the old fording ways, one of which was the old surveyed route below the bridge and the other a neighborhood way above it. It cannot be *presumed* that the County Court in granting the privilege to keep a toll bridge over a small stream, flush with water only a few months in the year, meant thereby to cut off from the community the privilege of fording the stream by the old highway, all the summer and fall, when there would be no use for a bridge whatever. This would be intolerable oppression, and throw the burden of keeping up the bridge largely upon travelers and inhabitants, passing to and fro, who would not need it, nor be benefitted by it. A toll bridge, at the crossing of a road worked and kept in repair by the county is a different thing from a toll gate on a turnpike. The latter is to take compensation for the use and convenience of the road which is built and maintained by the Turnpike Company. The gates are placed at suitable intervals for convenience, and it is a fraud on the company to go round them. Toll bridges on county roads, are simply for the convenience of those who are obliged, or prefer, to use them. The owners do not keep up the roads, and citizens of the county have the right to use the roads to the stream on each side and cross it at their own risk, without any fraud on the owner of the bridge.

It is not necessary to decide whether the County Court has power on establishing a toll bridge to vacate so much of the road as afforded access to a ford. In view of the duties of the court to the citizens, it certainly will not be

TOLL BRIDGE: Avoiding tolls by avoiding the bridge. Obstructing highway

presumed that it so intended, where the ford road would be available for the greater part of the year.

It results then that the plaintiffs, by virtue of their franchise, had no right to obstruct the old established road leading to the ford, and across the creek. It would not have benefitted them to have shown their franchise. Whether or not they were entitled to a verdict depended upon the acts of defendant in removing the obstructions which they had made of the several ways leading down through the creek channel, with the avowed purpose of compelling the whole travel to pass over the bridge. This they had no right to do, although clearly entitled to keep a toll bridge. A fair passage along the old established road should have been left open. The defendant was authorized by law whether or not the bridge was free for him individually, to remove obstructions to a public highway, and to pass over the lands of complainant along the highway, provided he did no wrongful act to make him a trespasser *ab initio*. But this he did, as shown by the evidence. He removed obstructions also on the way above the bridge, which was not the highway, and both above and below he seems to have committed unwarrantable acts of violence, not necessary to the object of opening the highway. The jury found for the plaintiffs on this count, and it cannot be well conceived how they could have rightfully done better for the plaintiffs, if their franchise had been shown, for that franchise did not warrant them in making obstructions in the first place. They were not hurt by the exclusion of the transcript, and, in that, there is no reversible error.

The remaining ground for a new trial concerns instructions refused for plaintiffs, and given against objections for defendant. It would be long to take them up *seriatim*, It suffices to say that so far as they may have been erro-

neously given or refused, they were cured by the verdict in favor of plaintiffs, and upon the point as to what constitutes a trespass, they are in accordance with the principles announced herein. That is to say, that although the defendant might lawfully pull down and remove obstacles in the highway, and pass over the lands of the plaintiffs along the highway, yet if he should commit any act in doing so destructive to property and not fairly necessary to the exercise of the right, not only to pass, but to remove a purpresture, he would be liable in damages.

The plaintiffs having given occasion to the conduct of defendant by their own wrongful act, are not in a meritorious position to claim vindictive or exemplary damages for any excess of the defendant, not plainly prompted by malice. The verdict well covers all actual injury, and there is nothing in the case of which plantiffs may complain. To throw open and leave open the fences was in this case permissible, and the acts done are not within the mischief of the act giving double damages.

The defendants took no bill of exceptions, and made no motion for a new trial. We find no error in the record proper, and there is nothing in their cross appeal of which we may take hold.

Affirm.