## WHITE RIVER BRIDGE COMPANY *v.* HURD.

### Opinion delivered July 2, 1923.

1. BRIDGES—JURISDICTION OF COUNTY COURT OVER TOLL BRIDGES.— Under Const., art. 7, § 28, granting exclusive original jurisdiction "in all matters relating to county taxes, roads, bridges, ferries," etc., the county court has exclusive jurisdiction in the matter of building bridges over watercourses, and may be authorized by the Legislature either to build them at public expense or to grant to any person or corporation the privilege to build a toll bridge where necessary for the public convenience and too burdensome to be constructed by general taxation.

2. BRIDGES—TOLL BRIDGE AS PART OF HIGHWAY.—A "toll bridge" is a part of the public highway the same as a bridge built by general taxation; the difference being that it is made at the expense of individuals or corporations and the cost of construction and maintenance is reimbursed by a toll fixed for the purpose.

3. BRIDGES—EXISTING STATUTES AS PART OF CONTRACT TO BUILD TOLL BRIDGE.—Existing statutes become a part of contracts between county courts and third persons granting a franchise to build toll bridges.

4. BRIDGES—POWER OF COUNTY COURT TO FIX RATES ON TOLL BRIDGES.—Under Crawford & Moses' Dig., § 10256, authorizing the county court to fix rates on toll bridges, a county court, in granting a franchise to build a toll bridge, may fix the tolls to be charged for the first ten years of its life.

5. BRIDGES—TOLL BRIDGE EXCLUSIVE PRIVILEGE.—The privilege granted by a county court to build a toll bridge over a navigable

stream,¹ under Crawford & Moses' Dig., § 10258, is exclusive, and precludes the county court from granting a ferry license to operate a ferry within one mile of such bridge.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; reversed.

. *Cooper Thweatt* and *Chas. B. Thweatt,* for appellant.

The provisions in the franchise for the toll bridge that the rate of toll fixed for the first ten years shall not be reduced during that period, and that no ferry license shall be granted within one mile of the bridge during the life of the franchise, are valid. The validity of the provisions is a judicial question for determination in a suit to enforce the contract. 153 Pac. 28; 42 S. W. (Tex.) 647; Abbott on Public Securities 490; 9 C. J. 61. Seller, when buyer declines to take the property, may tender it and sue for the purchase price. 24 R. C. L. 86. 51 L. R. A. (N. S.) 784; 14 C. J. 702; 90 Ark. 85; 106 Ark. 314; 60 N. E. 378. Rate of tolls. County court has power to regulate ferry rates. 152 Ark. 291. Municipal corporations fix rates in franchises granted by them. 152 Ark. 290; 194 U. S. 517, 24 Sup. Ct. 756; 184 U. S. 368, 22 Sup. Ct. 410. Statute authorizing toll-bridge franchises, C. & M. Digest, §§ 10255-10258. "Full" defined. 56 So. 792; 27 C. J. 923; 44 Ala. 506; 64 Atl. 702; Words & Phrases (2d S.) 678; 69 Ark. 269; 43 Ark. 198; 31 Ark. 25. Ferry competition. C. & M. Digest, § 10258; 69 Ark. 269; 130 Ark. 291; 130 Ark. 291; 95 Ark. 342.

. *E. B. Kinsworthy* and *B. S. Kinsworthy,* for appellee.

The rate of tolls is subject to alteration, and appellee was not bound to purchase the bonds for construction of the bridge unless the provision in the franchise that the rate of tolls as fixed at the present time shall not be subject to alteration for ten years. No county judge, under § 28, art. 7, Constitution, giving authority to regulate ferries, can fix rates that cannot be changed by his successors. Authority not given by C. & M. Digest, §§ 10255-6-7, for county court to grant franchise for toll

bridge with fixed rate of tolls for ten-year period. 14 Ky. Law Rep. 836; 21 S. W. 1042; 245 Ark. 209; 144 U. S. 201; 48 L. ed. 406; 94 Ark. 27; 148 Ark. 504; 31 Ark. 24. Right to regulate tolls can not be contracted away. 164 U. S. 578, 41 L. ed. 560. Neither is the provision that no license to operate a ferry within a mile of the bridge during the life of the franchise valid. C. & M. Digest, § 10258; 31 Ark. 241.

HART, J. The main question raised by this appeal is whether a county court of this State, which has granted a privilege to a person to build a toll bridge in the county over a navigable river, has also the right to fix the tolls for crossing said bridge for the period of ten years.

The circuit court held that no such power was vested in the county court, and to reverse a judgment based upon that holding this appeal has been prosecuted.

Under art. 7, § 28 of the Constitution of 1874, the county courts of this State have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, etc. Under this provision of the Constitution the county courts have exclusive jurisdiction of the matter of building bridges over watercourses. The Legislature might authorize the county courts to build such bridges at the public expense, or it might authorize them to grant the privilege to any person or corporation to build a toll bridge in the county over any navigable stream or other watercourse, where it might be deemed necessary for the public convenience, and too burdensome to be constructed by general taxation. *Wright* v. *Norris,* 43 Ark. 193, and *Gray* v. *Duffy,* 152 Ark. 291.

A toll bridge is a part of the public highway, the same as a bridge built by general taxation. The only difference is that, instead of being made at the public expense in the first instance, a toll bridge is authorized and laid out by the county court and made at the expense of individuals or corporations in the first instance;

and the cost of construction and maintenance is reimbursed by a toll fixed by the county court for the purpose. Every traveler has the same right to use it, paying the toll established by law, as he would have to use any other bridge.

The Legislature of 1875 passed an act granting toll-bridge and turnpike privileges, which is a part of our statute law today. Crawford & Moses' Digest, § 10255-10260 inclusive.

Sec. 10255 reads as follows: "The several county courts, through whose counties run any watercourse, lake, bay or swamp which may be too burdensome to bridge and keep in repair by the inhabitants thereof, are hereby fully and exclusively empowered to grant privileges to persons to build toll-bridges over, or turnpikes or causeways along the same, or through any overflowed or wet land, whenever the interest of the county or the traveling public shall, in their discretion, demand such improvements."

Sec. 10256 reads as follows: "The county courts shall have a general superintending control over such bridges and turnpikes, and they are hereby required to fix the rates of toll for crossing any bridge, causeway or turnpike which may be built under the provisions of this act, and to compel the same to be kept in good repair at all times."

It is conceded that the right to grant a franchise to build a toll bridge can be obtained only from the county court, and that it can be sold or transferred; and such is the law. That is to say, the legal mode of granting a franchise to construct a toll bridge is by a contract between the county court and the grantee of the franchise. It is also conceeded that, under the statute, the county court is required to fix the rates of toll, but it is contended that the power thus conferred is a continuing one which the county courts may be required to exercise from year to year, and that it cannot fix the toll for ten years in advance.

It may be stated in the outset that it is a rule of construction that existing statutes become a part of contracts like the kind under consideration. *Pocahontas* v. *Central P. & L. Co.,* 152 Ark. 276, and *Camden* v. *Ark. Light & Power Co.,* 145 Ark. 205. Hence this court has held that municipal corporations have the continuing power to lower rates of any water company, gas, or electric light plant. *Lonoke* v. *Bransford,* 141 Ark. 18, and *Pocahontas* v. *Central Power & Light Co.,* 152 Ark 276, and cases cited. The reason is that § 5445 of Kirby's Digest, which was in force at the time of the granting of the franchise to the public utilities in the cases cited, authorized cities and towns, upon complaint filed, to examine the rates charged consumers and determine whether they are reasonable, and, if found unreasonable, makes it their duty to fix such prices as might be deemed to be a reasonable charge. The statute is read into every contract to which it relates made since its enactment. Therefore it becomes our duty to construe § 10256 of the Digest to determine whether or not it was intended that the county court should have a continuing power to fix the rates of toll.

There is no hard and fast rule on the question, and the truth is that in each case the meaning of a statute must be sought by a study of its general scope and tenor and the consideration of its purposes; for it cannot be gathered from the consideration of one word, or even many words . Elloitt on Roads and Streets, 3 ed., § 51.

It has been well said that half of the English language is interpreted by the context. As we have already seen, the only reason for granting a franchise to build a toll bridge is that the cost of construction is too burdensome to be borne by general taxation. Realizing that toll bridges are parts of the public highways constructed to meet the public convenience, the Legislature provided that the county courts should have a general superintending control over them. This is for the pur-

pose of seeing that they are kept in good repair and are free from obstruction, to the end that the public may travel over them in the same manner that a bridge built by the county is traveled. The same section also provides that the county courts are required to fix the rates of toll for crossing such bridges. This is done for the very purpose of enabling the person or corporation who has obtained the franchise for building such bridges to charge a toll for recompense for the cost of construction.

It is manifest that, if the county court could not fix the toll for a reasonable number of years in the future, no reasonable contract could be made for the construction of such a bridge. If the Legislature had intended that the county courts could not fix the tolls for a reasonably definite time for the future, it would have limited the right by appropriate language, as was done in other cases. To illustrate: § 10278 provides that the county judge shall regulate the tolls to be charged by turnpike companies upon a scale equitable to the corporation obtaining the franchise and the public. This could prevent a lowering of the tolls to the point of confiscating the property of the corporation.

This view of the turnpike statute, while not directly before the court for construction, is evidently the one taken by this court in the case of *Ratcliffe* v. *Pulaski Turnpike Co.*, 69 Ark. 264. In that case it was recognized that the county court, in consideration of the construction of the turnpike and keeping the same in repair, granted the corporation constructing it the exclusive privilege of collecting the stipulated toll. The court recognized that the privilege granted was exclusive, and was for a valuable consideration. The rule adopted was that, where the privileges granted are exclusive, and are for a valuable consideration, the matter assumes the nature of a contract between the county court and the individual grantee, the obligation of which cannot be impaired. The county court was declared to be the agency of the State in the matter.

Again § 4701 of the Digest provides for the regulation of tolls on ferries. The language used is that the tolls shall at all times be subject to regulation by the county court. The reason is that annual franchises are granted in the case of ferries, and no injustice could be done by the county courts having power at all times to regulate the rates.

Therefore we have concluded that any apparent ambiguity in the statute is made certain when interpreted according to the evident purposes of the act, and are of the opinion that the act conferred upon the county court the power not only to grant the franchise, but to fix the toll for the first ten years of the life of the franchise. There is nothing in the record to show that the fixing of the tolls for this period of time would be unreasonable or arbitrary.

It is next contended that the privilege granted is exclusive, and that the county court, after conferring it, could not grant a ferry license to operate a ferry within a mile of the bridge. We think this construction is borne out by § 10258. This section provides that no county court, after conferring the privileges of this act upon any person, shall have power to confer same, or like privileges, upon any person to the injury of him upon whom such privileges were first conferred.. This principle was recognized in *Ratcliffe* v. *Pulaski Turnpike Co.*, 69 Ark. 264, where it was held that the county court, after having granted the exclusive privilege for the construction of a turnpike, cannot, during the life of the franchise, open a parallel public road which would divert the travel from the pike. Bridges and ferries are designed for the same purpose. That is to say, they are used for the purpose of crossing navigable streams or other watercourses where there is a public road. They are primarily for the convenience and use of the traveling public, and no useful purpose could be served by adopting both as the means of crossing a river at the same point. The county court is the agency of the State in

the matter, and has the power to grant an exclusive franchise for the construction of a toll bridge, and this in itself would prevent the granting of such franchise to another bridge company or to a ferry company.

It follows that the judgment will be reversed, and the cause will be remanded for further proceedings according to law and not inconsistent with this opinion.