## McClintock v. Bovay.

### Opinion delivered May 26, 1924.

Toll-bridge—Exclusiveness of privilege.—Under Crawford & Moses' Dig., § 10258, making the grant of a toll-bridge franchise exclusive, the rights conferred under such a franchise are superior to ferry privileges, and the county court could not grant a ferry privilege which would interfere with the exclusive privilege to build and operate a toll-bridge.

Appeal from Prairie Chancery Court, Southern District; *John E. Martineau*, Chancellor; affirmed.

*Gregory & Holtzendorff* and *Emmet Vaughan*, for appellant.

Where one owns land on both sides or banks of a river or stream, he shall be entitled to the sole and exclu-

sive right of ferriage at such place.    C. &. M. Dig.
§ 4694; 26 Ark. 466.   A ferry franchise is a privilege to
take tolls for transporting men, horses, cattle and
vehicles with or without their loading, across a lake or
stream or some other body of water.    44 Ark. 188.
When the county court has once granted the privilege of
keeping a public ferry, the privilege is exclusive within
the distance, so long as it is exercised under the annual
grant of license provided for.   94 Ark. 193; 20 Ark. 561;
20 Ark. 572; 44 Ark. 184.   A free ferry or bridge may be
established, provided there is no regularly established
bridge or ferry within one mile above or below the ferry.
65 Am. Dec. 535; 17 W. Va. 396.

*Chas. B. Thweatt* and *Cooper Thweatt,* for appel-
lee.

Appellant's ferry rights are vested for the year 1923
alone, and it does not appear that the bridge will be
built or those ferry rights interfered with during that
time.   95 Ark. 342; 130 Ark. 299.   The toll-bridge fran-
chise is valid and binding, the building and operation of
the bridge are lawfully authorized, and cannot be
enjoined by any one.   52 Ark. 61; 159 Ark. 652.   Even
though the order granting the franchise was erroneous,
the judgment is conclusive on appellant, on the principle
of *res judicata.*   Appellant's only remedy would be by
appeal, and injunction will not lie.   20 Ark. 573; 151
Ark. 393; 19 Cyc. 496.

McCULLOCH, C. J.   Appellant is the owner of the
land on both sides of White River for a certain distance
southward from a point where the line of the Chicago,
Rock Island & Pacific Railway Company crosses the river
near Devalls Bluff, and he has for many years operated
a public ferry across the river, connecting an improved
public highway which runs from the bank of the river
on each side a short distance south of the railroad cross-
ing.   Appellant has procured a license from the county
court from year to year to operate the ferry, and, at the
time of the commencement of this action, in December,

1922, he was operating the ferry under a license issued that year, and also procured a license for the year 1923.

On December 19, 1921, the county court of Prairie County granted to Harry E. Bovay, one of the appellees, an exclusive franchise to build a toll-bridge across White River near Devalls Bluff. The consent of Congress to the construction of the bridge across White River, as a navigable stream, was obtained by the enactment of a statute, and the Secretary of War located the site of the bridge at a point about fourteen hundred feet south of the railroad crossing. The site was located on appellant's land on both sides of the river. Since that time the county court has opened up laterals on each side of the river from the public road and established a public highway to the bridge site. Appellee Bovay assigned his franchise to a corporation known as the White River Bridge Company, and that corporation is proceeding to construct the bridge at the designated site. Appellant's ferry is located about midway between the railroad bridge and the proposed bridge to be constructed under the franchise referred to.

Appellant instituted this action against appellee Bovay and his successors, alleging that, by reason of being owner of the land on both sides of the river, he had a continuing right to exercise the ferry privilege, and that he was operating the ferry under the annual license granted him by the county court, and that the construction of the bridge constituted an interference with his ferry privileges. The prayer of the complaint is that appellees be restrained from proceeding with the construction of the bridge.

Appellees filed an answer, setting forth the franchise granted by the county court, and pleading, as an adjudication of appellant's right to controvert the power of appellees to exercise the franchise, the fact that appellant had appeared in the county court and made himself a party and resisted the issuance of the franchise. The court overruled appellant's demurrer to the answer, and,

on the hearing of the cause, rendered a final decree dismissing the complaint for want of equity.

The contention of appellant is that, on account of the fact that he owns the land on both sides of the river and has been exercising his ferry privilege, he has a continuing right to operate the ferry so long as he elects to exercise the right and complies with the law with respect to obtaining a license from year to year, and that the construction of the bridge is an interference with his ferry privileges which should be prevented by the chancery court. He invokes the rule, laid down in controversies between rival ferry owners, that a person owning land on both sides of a river has the exclusive ferry rights for a distance of one mile on each side of his ferry, and that a court of chancery should protect him from interference, even by one operating a ferry under a license obtained from the county court. *Finley* v. *Shemwell,* 94 Ark. 190; *Crane* v. *Jackson,* 116 Ark. 100. This is not a controversy between rival claimants of ferry privileges as to the superiority of their rights, but is one between a claimant of an exclusive ferry privilege and the other claiming exclusive privilege under a franchise to construct a toll-bridge. The statute authorizing the granting of franchises for the construction of toll-bridges provides that the privileges thus granted are exclusive (Crawford & Moses' Digest, § 10258), and we decided, in the recent case of *White River Bridge Co.* v. *Hurd,* 159 Ark. 652, that the rights conferred under a franchise to build a toll-bridge were superior to ferry privileges, and that the county court could not grant a ferry privilege which would interfere with the exclusive privilege to build and operate a toll-bridge. The effect of that decision was to hold that a franchise to build a toll-bridge is superior to a ferry franchise, for the reason that a bridge is more to the convenience and benefit of the public, and for that reason the statute, in express terms, had made the bridge franchise exclusive. The fact that appellant has obtained his license from year to year does not deprive the county court of the power, under the

statute, to grant an exclusive privilege in that territory to construct and operate a toll-bridge. The county court has the power, until the exercise of the franchise is consummated by the construction and operation of the bridge, to continue the ferry privileges, but, as soon as the power, under the bridge franchise, is consummated by putting the bridge into operation, the privilege becomes, under the statute, exclusive, and cannot be interfered with by the granting of a ferry privilege within the prohibited distance of the bridge.

The question of appellant's compensation for his property taken as a bridge site is not involved here, and his rights in that regard are not affected by the decree in this case, as this is not a suit to condemn the bridge site, as in the case of *Fort Smith & Van Buren Bridge District* v. *Scott,* 103 Ark. 405. The effort in the present litigation is to prevent the interference with appellant's ferry privilege by operating a bridge within a mile of the ferry. We hold now that the bridge privilege is superior to the ferry privilege, and that ends this controversy.

The decree of the chancery court was therefore correct, and the same is affirmed.