McCLINTOCK v. WHITE RIVER BRIDGE COMPANY.

Opinion delivered October 11, 1926.

1. JUDGMENT—RES JUDICATA.—Judgments in previous actions sustaining the condemnation of land for a public road and defendants' right to build a toll bridge, as against plaintiff's ferry privilege, *held res judicatae,* in a subsequent action between the same parties, on the issue whether plaintiff's land was taken and his ferry rights invaded, in violation of the Fourteenth Amendment.

2. BRIDGES—EXCLUSIVE PRIVILEGE OF TOLL BRIDGE.—Crawford & Moses' Dig., §§ 10255-10260, conferring on the county courts the power to grant exclusive privileges to build toll bridges, was not repealed by Crawford & Moses' Dig., §§ 4693-4721, authorizing the grant of exclusive ferry licenses, as the two acts are not in conflict.

Appeal from Prairie Circuit Court, Northern District; *George W. Clark,* Judge; affirmed.

*Gregory & Holtzendorff* and *Emmet Vaughan,* for appellant.

*Cooper* and *John D. Thweatt, G. DeMatt Henderson* and *Chas. B. Thweatt,* for appellee.

WOOD, J. This action was instituted by J. M. McClintock against the White River Bridge Company and Harry E. Bovay. For his first cause of action the

plaintiff, in substance, alleged that the defendants were liable to him in damages which accrued by reason of the opening of a public road on his land two hundred feet wide, without notice to him, and the destruction of his ferry business and equipment by the building and operation of a toll bridge on his land. The plaintiff alleged that he owned the east half of section 17, through which White River runs from north to south; that he had a franchise to operate a ferry near the half section line; that the county court granted a franchise to the defendant Bovay to build a bridge over White River, and contracted with Bovay not to grant to any one else a bridge or ferry franchise for a distance of ten miles of the bridge; that Bovay transferred his franchise to the White River Bridge Company. The bridge franchise was secured on December 19, 1921, and covered a period of forty-nine years. The plaintiff alleged that the destruction of his ferry franchise and the taking of his land for a public road without compensation deprived him of his property without due process of law and denied him the equal protection of the law, in violation of the 14th Amendment to the Constitution of the United States; that the defendants had rested the abutments of their bridge on the roadway and taken the dirt from this roadway to build dumps for approaches to their bridge; that the dirt so taken was of the value of $6,948, and that the land taken for roadway and the ferry equipment were of the value of $251,000, and that he was entitled to $75,000 for destruction of his ferry business, for which sum he prayed judgment. He further alleged, for a second cause of action, that the bridge company began operation on the first day of January, 1925; that this action of the bridge company was an infringement of plaintiff's exclusive statutory right to operate his ferry, and that the operation of the bridge subjected the defendants to penalties imposed by § 4694 of C. & M. Digest. He therefore prayed judgment against the defendants in the sum of $100 per day from January 1, 1925, to the date of judgment.

The defendants answered the first cause of action, denying that the road was opened on plaintiff's land by the county court without notice to plaintiff, and alleged that plaintiff appeared and contested the proceedings; that he lost the contest in the county court and also in the circuit and Supreme courts, to which he appealed from the judgments against him.   The defendants denied that the plaintiff had an exclusive ferry franchise, and denied all the other allegations of the complaint.   They alleged that the plaintiff's ferry rights had ceased to exist by reason of the bridge franchise, under the statute making such franchise exclusive.   They pleaded the proceedings in the county, circuit and Supreme courts in the case of *McClintock* v. *Bovay,* reported at 163 Ark. 388, 260 S. W. 395, as *res judicata* of the present action against them, for compensation for damages for the taking of the plaintiff's land.

The defendants demurred to the second cause of action, on the ground that the complaint shows on its face that the plaintiff has no ferry rights; that his former ferry rights have ceased to exist by reason of a valid franchise and the operation of a toll-bridge thereunder, and that he is not entitled to recover any damages or penalties for the infringement of ferry rights.

The case was heard upon the pleadings and an agreed statement of facts, in which the orders of the county court opening the road and granting the toll-bridge franchise, the proceedings in the case of *McClintock* v. *Prairie County,* and the order accepting the public road, were made evidence in this cause, and it was admitted that the plaintiff had no notice of the order of the county court opening the road, rendered October 25, and that he afterwards filed his petition in the county court to vacate the order, which was protested by Bovay and certain citizens of Prairie County, and the case was heard, and the county court rendered the order opening the public road and authorizing Bovay and his successors and assigns to improve the same in such manner as would make the same suitable for passing to and

from said bridge and for connecting the bridge with the improved highway. Plaintiff took an appeal from the adverse judgment of the county court to the circuit court, and from the adverse judgment of the circuit court to the Supreme Court, and the cause was decided by the Supreme Court, and is reported in 163 Arkansas at page 388, 260 S. W. 395.

It was agreed that the defendants did not take charge of or appropriate any lands of plaintiff whatever except under the authority of the order of the county court opening the road. It was agreed that they had constructed the bridge under the authority of the act of Congress and the bridge franchise granted by the county court; that they built the abutments to the bridge entirely upon the right-of-way of the road so opened up by the orders of the county court, and that these abutments are so built as to connect the new road with the bridge over White River. The dirt used in constructing the embankments was taken from the right-of-way of the road opened by the orders of the county court; that the alleged usurpation of ferry privileges of the plaintiff and the destruction of his land and equipment for ferry purposes by the building and operation of the toll-bridge by the bridge company was done entirely under the bridge franchise granted to Bovay and transferred to the bridge company; that the plaintiff had operated his ferry at a point five hundred feet above the bridge on White River for ten years past under an annual license from the county court of Prairie County, until January 1, 1925, when he applied for an annual license for the year 1925, and same was refused, because the county court had granted a bridge franchise, and the operation of the toll-bridge thereunder began on January 1, 1925.

It was agreed that the cases of *McClintock* v. *Bovay*, 163 Ark. 388, 260 S. W. 395, and *McClintock* v. *Bovay*, 164 Ark. 482, 262 S. W. 669, were between the same parties and related to the same bridge and ferry as the present suit, and the case of *White River Bridge Company* v. *Hurd*, 159 Ark. 652, 252 S. W. 917, also related to the

same bridge.    The court rendered a judgment sustaining the demurrer to the plaintiff's second cause of action, and, the plaintiff refusing to plead further, dismissed his complaint.    On the first cause of action the court found that the defendants were not liable to the plaintiff, and dismissed this cause of action also.    From the judgment is this appeal.

1.    It is disclosed by the pleadings and the agreed statement of facts that the land in controversy had been condemned and set apart by the county court of Prairie County as a public highway on the petition of Bovay and certain other citizens and taxpayers of Prairie County, in which proceedings the appellant was allowed to intervene and contest the right of Prairie County and Bovay and others to have the land condemned and taken as a public road.    That cause was finally adjudicated in the Supreme Court in *McClintock* v. *Bovay,* 163 Ark. 388, 260 S. W. 395, and the judgment of the county court condemning the land in controversy as a public road was sustained.

In the case of *McClintock* v. *Bovay,* 164 Ark. 482, 262 S. W. 669, McClintock instituted an action against Bovay and his successors, alleging that they were building a bridge over White River contrary to his right to exercise ferry privileges under his license and as the owner of the land on both sides of the river.    The defendants in that action set up that they were building the bridge under a franchise granted them by the county court of Prairie County.    In that case we held as follows: ''That the rights conferred under a franchise to build a toll-bridge were superior to ferry privileges, and that the county court could not grant a ferry privilege which would interfere with the exclusive privilege to build and operate a toll-bridge.    *    *    *    The fact that appellant has obtained his license from year to year does not deprive the county court of the power, under the statute, to grant an exclusive privilege in that territory to construct and operate a toll-bridge.    *    *    *    The question of appellant's compensation for his property taken as a bridge-site and his rights in that regard are not affected by the decree

in this case, as this is not a suit to condemn the bridge-site."

In the case of *White River Bridge Co.* v. *Hurd,* 159 Ark. 652, 252 S. W. 917, we held that county courts have exclusive jurisdiction of the matter of building bridges over watercourses. We concluded the opinion in that case as follows: "The county court is the agency of the State in the matter, and has the power to grant an exclusive franchise for the construction of a toll-bridge, and this itself would prevent the granting of a franchise to another bridge company or to another ferry company."

In the agreed statement of facts in the case at bar it is agreed that *"McClintock* v. *Bovay,* 163 Ark. 388, 260 S. W. 395, and *McClintock* v. *Bovay,* 164 Ark. 482, 262 S. W. 669, were between the same parties and related to the same bridge and ferry as the present suit; that the case of *White River Bridge Company* v. *Hurd,* 159 Ark. 652, 252 S. W. 917, relates to the same bridge as is involved in the present suit."

The above cases (*McClintock* v. *Bovay*) are *res judicata* on the issue between the appellant and the appellees in this action, that appellant's lands were taken and his ferry rights invaded and destroyed by appellees contrary to law, and for which they were liable to him in damages. These decisions are likewise *res judicata* on the issue as to whether or not appellee had damaged the appellant by taking dirt from his land for the building of the dumps connecting the bridge with the roadway. The dirt for these dumps, it appears from the agreed statement, was taken from the 200-foot strip of land which had been condemned as a public road by the county court, and it appears also that the abutments of the bridge rested upon this roadway. Therefore appellees, under the former decisions of this court, are not liable to the appellant in this action in damages as compensation for the value of the dirt taken from his land to build a roadway for the bridge, nor for the destruction of his ferry business and the value of his ferry equipment. In building these dumps for bridge purposes and

to connect the bridge with the highway, and in placing the abutments thereon all within the 200-foot strip of public roadway condemned by the county court, the appellees were exercising rights which had been legally conferred upon them by the county court, as held in the above decisions. Under our statutes, and decisions construing them, the appellant, as the owner of land on both sides of White River, had the exclusive right to ferriage privileges, provided a license was conferred upon him by the county court to exercise such privileges. To obtain such license, the applicant therefor must satisfy the court that public convenience will be subserved; and the license to exercise the privilege continues only one year from the date of such license. See §§ 4694, 4696, 4699, 4704, C. & M. Digest. In this connection see *Murray* v. *Menifee,* 20 Ark. 265; *Bell* v. *Clegg,* 25 Ark. 28; *Little Rock* v. *McGehee,* 41 Ark. 209; *Finley* v. *Shemwell,* 94 Ark. 193, 126 S. W. 719; *Shemwell* v. *Finley,* 95 Ark. 344, 129 S. W. 792; *Shults* v. *Munn,* 124 Ark. 418, 187 S. W. 316; *Munn* v. *Shults,* 130 Ark. 300, 197 S. W. 570. It follows, under the above decisions of the court, that the trial court did not err in dismissing the appellant's complaint on his first cause of action.

2. It follows likewise, under the decisions in *White River Bridge Company* v. *Hurd, supra,* and *McClintock* v. *Bovay,* 164 Ark., *supra,* that the court did not err in sustaining the appellee's demurrer to appellant's complaint setting forth his second cause of action and in dismissing that cause of action. Learned counsel for appellant argue that these decisions were made upon the authority of § 10258, C. & M. Digest, which is as follows: ''No county court, after conferring the privileges of this act upon any persons, shall again have power to confer the same or like privileges upon any person, to the injury of him upon whom such privileges were first conferred.'' This is § 4 of act of March 6, 1875, which confers upon the county courts of this State the power to grant privileges to any person or persons to build toll-bridges over watercourses, etc., whenever the interests of the county

or of the traveling public shall, in the discretion of the county court, demand such improvements. See § 10255, C. & M. Digest. Counsel contend that the above provision of the act of March 6, 1875, making bridge franchises exclusive, was repealed by act 50 of the Acts of 1913, p. 163, approved Feb. 13, 1913, as follows:

"Section 1. That § 3556 of Kirby's Digest of the Laws of Arkansas be amended so as to read as follows:

" 'Section 3556. Every person owning the land fronting on any public navigable stream shall be entitled to the privilege of keeping a public ferry over or across such navigable stream; if he owns the lands on both sides or banks, or if he shall have possession of both sides or banks, by preemption or settlement right, he shall be entitled to the sole and exclusive right of ferriage at such place; and if he owns the land on one side only, or has possession thereof, by preemption or settlement right, he shall have the privilege of a public ferry from his own shore and making the landing and road up said opposite bank, and keeping the same at all times in good repair and condition for ascending and descending, and an exclusive right to all ferry privileges in any such case shall follow any leasehold interest during the life of said lease and the faithful performance of all municipal, county and State obligations, and the right shall not be impaired by any packet trade or company, or otherwise, under penalty of one hundred dollars' fine of any such owner or manager of said packet enterprise or the party in any way violating the spirit or letter hereof, to be recovered by appropriate action in any court having jurisdiction, at the instance of the injured party, and each day's interference shall constitute a separate offense.

" 'Section 2. That all laws and parts of laws in conflict herewith are hereby repealed. This act being necessary for the immediate preservation of the public peace, health and safety, the same shall take effect and be in force from and after its passage'. "

This act of February 13, 1913, was a reenactment of
§ 3556 of Kirby's Digest, which was a part of the Revised
Statutes. The amendment, after reenacting this provi-
sion of the Revised Statutes as to ferry privileges,
merely extends the privileges therein granted so as to
include those holding a leasehold interest as well as those
owning the fee; and the right or privilege, when granted
by license from the county court to the owner or the owner
holding a leasehold interest under the act, could not be
impaired by any packet, trade, or company or otherwise,
as prescribed in the amendment, under a penalty of $100.
It was not the design of the lawmakers in any way to
change the provisions of the laws pertaining to ferries
and digested in chapter 66, §§ 3555 to 3562, Kirby's
Digest, and later digested in ch. 65 of C. & M. Digest.
All the provisions, such as authorizing the county court
to issue a license only upon a showing that the ferry
is needed for public convenience, and limiting the privi-
leges under the license for a period of only one year,
etc., are left intact. The amendatory act confers the
exclusive right of ferriage, but it has no reference what-
ever to the act of 1875, conferring upon county courts
the power to grant certain toll-bridge privileges, as con-
tained in ch. 172, C. & M. Digest, §§ 10255 to 10260,
inclusive.

There is no conflict, certainly no invincible repug-
nancy, between the provisions of § 10258, C. & M. Digest,
pertaining to exclusive toll-bridge privileges, and the
provisions of § 4694, C. & M. Digest, pertaining to exclu-
sive ferry privileges. Repeals by implication are not
favored. The cases of *White River Bridge Company* v.
*Hurd, supra,* and *McClintock* v. *Bovay, supra,* were
decided since the enactment of the act of February 13,
1913. In the case of *Bridge Company* v. *Hurd,* one of
the contentions was that the toll-bridge privilege was
exclusive, and, when conferred by the county court, that
court could not thereafter grant a ferry license to any
one to operate a ferry within a mile of the bridge. We
upheld this contention, and cited § 10258, C. & M. Digest,

concerning the exclusive toll-bridge privileges. And in the case of *McClintock* v. *Bovay, supra,* we cited the case of *White River Bridge Co.* v. *Hurd, supra,* and stated: "The effect of that decision was to hold that a franchise to build a toll-bridge is superior to a ferry franchise, for the reason that a bridge is more to the convenience and benefit of the public, and for that reason the statute in express terms had made the bridge franchise exclusive. The fact that appellant has obtained his license from year to year (to operate a ferry) does not deprive the county court of the power, under the statute, to grant an exclusive privilege in that territory to construct and operate a toll-bridge." These decisions, thus holding, would both be erroneous and should be overruled if act 50 of the Acts of 1913, *supra,* pertaining to ferry privileges, repealed the provisions of § 10258 of C. & M. Digest, making toll-bridge franchises exclusive, as contended by counsel for the appellant. But, as we have stated, their contention is not well taken, and the court did not err in dismissing the complaint as to the second cause of action.

There is no error in the record. The judgment is correct, and it is therefore affirmed.