DESHA *v.* INDEPENDENCE COUNTY BRIDGE DISTRICT No. 1.

Opinion delivered May 20, 1929.

*Cole & Poindexter, Charles W. Mehaffy, John E. Miller,* and *Cul L. Pearce,* for appellant.

*Ernest Neill* and *S. M. Casey,* for appellee.

SMITH, J.  By special act No. 338 of the 1925 session of the General Assembly (Acts 1925, page 977), Independence County Bridge District No. 1 was created for the purpose of constructing a bridge across White River at or near Batesville.  The district was unable to acquire the right-of-way, and it became necessary to condemn it, and a suit for that purpose was brought pursuant to § 3 of the act.  Judgment was rendered in the suit in favor of the landowner for the property so condemned in the sum of $3,040.  This judgment was reversed on the appeal to this court, and the opinion

then rendered states fully the facts out of which the present appeal arises, and it will be unnecessary to repeat them. *Desha* v. *Independence County Bridge Dist. No. 1,* 176 Ark. 253, 3 S. W. (2d) 969. As stated in the former opinion, the landowner whose land was condemned as a site for the bridge owned lands on both sides of the river, and operated a ferry across the river at or near the bridge site. At the time of the trial from which this appeal comes the bridge had been completed and was in operation, and the value of the ferry franchise had been destroyed, and the ferry was no longer operated.

The court charged the jury that the landowner was entitled to recover as damages the market value of the land taken, and "market value" was defined. The jury was also told that the term market value "includes the value for any and all legitimate purposes for which it may be adapted. If, by reason of its location, its natural or physical advantages, and its intrinsic character, it is peculiarly adapted and valuable for a particular use, such as a site for a ferry, or a bridge, such value should be considered in determining its market value."

The court also charged the jury that: "In determining the damage to which you believe the defendant Desha is entitled by reason of the taking of his land by the plaintiff bridge district, *you should not consider any loss or damage he may have sustained or will sustain by reason of the loss of revenue or income from the ferry on account of the construction of the bridge.*" Specific objections were made to the portion of the instruction appearing in italics, which raise the questions hereinafter discussed. The court had previously refused to give instructions numbered 1 and 2 requested by appellant, which read as follows:

"1. You are instructed that any person owning lands fronting on opposite banks of a navigable stream in this State is entitled to the sole and exclusive right of ferriage at such place, and when a ferry is once

legally established and continues to operate in the manner provided by law, the owner thereof cannot be deprived of said right and the resulting benefits without compensation therefor.

"2. You are instructed that, in fixing the amount of damages to be awarded to the defendant, you should consider the right or franchise to operate the ferry as a permanent and continuing right, and not subject to destruction or condemnation by legislative act without just compensation to the owner."

The jury returned a verdict in favor of the landowner for $6,000, and there appears to be no question that this is full compensation for all damages which he sustained, except for the loss in value of the ferry franchise. Appellant reviews the legislation of this State in regard to ferries and the decisions of this court construing this legislation; but we do not do so, for the reason that the plaintiff improvement district did not propose to establish, and has not, in fact, established, another ferry, nor has it condemned or taken appellant's franchise to operate the ferry. It is, of course, an undisputed fact that by the construction of the bridge another way to cross the river has been created, which the traveling public uses, and the value of the ferry franchise has been thereby destroyed. Must the bridge district, for this reason, compensate the ferry owner for the loss of profits and future earnings thus sustained? The answer to this question is decisive of the present appeal.

Witnesses for appellant were asked what, in their opinion, was the market value of appellant's land, and various answers were given, the value being placed at from $25,000 to $60,000, but the witnesses who so answered all admitted that this valuation was based upon the assumption of the continued permanent earnings of the ferry under an undisturbed franchise. When told by the court that this was not the proper basis to establish the market value of the property, these witnesses

revised their estimate, and exceptions were saved to these rulings of the court.

This last-mentioned ruling of the court conforms to the opinion on rehearing on the former appeal, where it was said that "a majority of the court are of the opinion that the evidence as to the amount of revenue or income from the ferry was not competent testimony." By this it was meant that the market value of the land taken for the bridge could not be determined by taking into account the earnings of the ferry as a right in perpetuity. It was not contended that there was any interference with or diminution in the earnings of the ferry until after the completion of the bridge. This was not a proceeding to condemn and acquire the ferry. Had this been a suit to acquire the ferry for some agency of the State, its earning power would have been a proper matter to take into account in determining its value. But such is not the purpose of the suit. The suit is one to condemn and acquire a site for a bridge. And while it is true, as has been said, that the exercise of this right and the construction of the bridge has destroyed the value of the ferry franchise, this is an incident to, and not the purpose of, the suit.

Appellant makes the fundamental mistake of assuming that his right to the ferry franchise, resulting from his ownership of the land on the opposite banks of the river, is a right in perpetuity. It is not. In the case of *McClintock* v. *White River Bridge Co.*, 171 Ark. 943, 287 S. W. 163, the owner of a ferry franchise made substantially the same contention against the owner of a bridge franchise, it being true in that case, as it is in this, that the erection of a bridge destroyed the value of the ferry franchise, but it was there said: "In the case of *White River Bridge Company* v. *Hurd*, 159 Ark. 652, 252 S. W. 917, one of the contentions was that the toll-bridge privilege was exclusive, and, when conferred by the county court, that court could not thereafter grant a ferry franchise to any one to operate a ferry within

a mile of the bridge. We upheld this contention, and cited § 10258, C. & M. Digest, concerning the exclusive toll-bridge privileges. And in the case of *McClintock* v. *Bovay, supra* (163 S. W. 388), we cited the case of *White River Bridge Co.* v. *Hurd, supra,* and stated: 'The effect of that decision was to hold that a franchise to build a toll-bridge is superior to a ferry franchise, for the reason that a bridge is more to the convenience and benefit of the public, and for that reason the statute, in express terms, had made the bridge franchise exclusive. The fact that appellant has obtained his license from year to year (to operate a ferry) does not deprive the county court of the power, under the statute, to grant an exclusive privilege in that territory to construct and operate a toll-bridge.' "

Appellant points out that he and his predecessors in title have for nearly a century operated the ferry in question; but, while this is true, it is also true that this was done under the annual grant of a right so to do by the order of the county court. Appellant has never at any time been granted nor has he ever acquired a franchise in perpetuity. The franchise, if it may be called such, is not only granted from year to year, but, as appears from the McClintock case *supra,* and the cases there cited, the grant was provisional, there being a reservation always of the right to authorize a bridge franchise when the public convenience required that this be done. There has been no infringement of any vested right of appellant, and he is not entitled therefore to have damages assessed in his favor as if there had been.

The very recent case of *Larson* v. *South Dakota,* 278 U. S. 429, 49 S. Ct. 196, is in point. In that case the Supreme Court of the United States considered the value of a ferry franchise granted under the laws of the State of South Dakota, which are not substantially different from our own on the subject of ferry franchises, except that the lease, as it is called in that State, is for a period not exceeding fifteen years, instead of an annual grant, as

with us. The owner of the ferry franchise in that case contended that the erection of a bridge, under the authority of an act of the General Assembly of the State, destroyed the value of his ferry franchise, and he brought suit in the Supreme Court of the State against the State. *Larson* v. *State*, 51 S. D. 561, 215 N. W. 880. Construing the meaning of "exclusive ferry franchise" as authorized by the statute of that State, the Supreme Court of the State said:

"All that is contemplated by the statute and all that was granted by the plaintiff's leases was the right to operate a ferry, together with a prohibition upon the granting boards from granting other ferry leases within the granted area during the period. * * * Nowhere in the statute can be found or implied a provision that the State was binding itself not to construct, nor authorize the construction of, a bridge across the river within the 4-mile area, or not to permit carriage by aviation across it. The fair and reasonable construction of the statute is that it refers solely to transportation by ferry."

On the appeal to the Supreme Court of the United States, Chief Justice Taft, after pointing out that the question, whether a statute authorizing the construction of a bridge within the limit of the 4-mile area of an exclusive ferry franchise impaired the obligation of a contract, was one which invoked the independent consideration of that high court as to what contract existed and its construction, proceeded to consider the meaning of the term "exclusive lease," employed in the statute of that State. After a review of numerous cases, it is stated that the contention that an exclusive ferry franchise should be construed to cover all methods of travel and transportation across the water is rejected in most cases, and that, by the weight of authority, it could not be said that an exclusive grant of a ferry franchise, without more, would prevent a Legislature from granting the right to build a bridge near the ferry, and he further said: "Following the cases in this court in its

limited and careful construction of public grants, it is manifest that we must reach in this case the same conclusion.''

We conclude therefore. that it was not error for the court to refuse to permit appellant to prove the value of the land based upon the assumption that his ferry franchise was perpetual and inviolable, and the judgment must be affirmed, and it is so ordered.