Hillsborough,
June, 1898.

## STANYAN v. PETERBOROUGH.

An action cannot be maintained against a town for neglect to keep guide-boards in suitable repair, under P. S., c. 78, s. 2, unless notice of an intention to bring such suit has been given, as required by P. S., c. 257, s. 7.

DEBT, to recover penalties for the neglect of the defendant town to maintain guide-boards at the junctions of highways therein. Writ dated September 26, 1896. Trial by the court. The court ruled that in this action, brought under s. 2, c. 78, P. S., the requirements of s. 7, c. 257, P. S., relative to notice, do not apply, and the defendants excepted. The court ruled that under s. 2, c. 78, P. S., towns are chargeable for neglect to maintain guide-boards at each junction of highways, that such neglect is not considered as one entire offence for all the junctions neglected in the town, and that in this regard the decision in *Clark* v. *Lisbon*, 19 N. H. 286, does not apply to cases brought under s. 2, c. 78, P. S., and the defendants excepted.

*William S. Franklin* and *E. A. & C. B. Hibbard*, for the plaintiff.

*James F. Brennan*, for the defendants.

PARSONS, J.　"If any town neglects to keep in suitable repair guide-boards or posts, . . . it shall forfeit for each neglect five dollars, for the use of the person suing therefor." P. S., c. 78, s. 2.

"Whenever a fine or penalty is imposed for neglect for any period of time, such neglect may be alleged to have begun at any specified time, and shall be reckoned from the time so alleged; but no suit or prosecution in such case shall be begun against a town or town officers until twenty days after notice in writing of the intention to begin it, nor then, if within that time the duty is performed." P. S., c. 257, s. 7.

The suit was brought without notice. The plaintiff claims that none is required; that in the first clause, "neglect for any period of time" refers only to such neglects as must continue a specified period of time in order to expose those guilty of them to the penalty; and consequently, that the proviso as to notice applies only to suits for a penalty where the forfeiture is incurred only if the neglect extends over a specified period of time. In short, that the statute is to be understood as if it read, "whenever a fine or penalty is imposed for neglect for any speci-

fied period of time." But it is manifest that neglect for any period of time may mean neglect for a definite or an indefinite period. Towns have by statute been made liable for damages happening to any traveler by reason of any defect in any highway rendering it unsuitable for the travel thereon (P. S., c. 76, s. 1); but the statute has been construed not to impose liability where the immediate cause of the injury is such a defect that the town could not have had notice of it, or could not have prevented or remedied the defect before the accident. *Palmer* v. *Portsmouth*, 43 N. H. 265; *Clark* v. *Barrington*, 41 N. H. 44; *Howe* v. *Plainfield*, 41 N. H. 135; *Johnson* v. *Haverhill*, 35 N. H. 74; *Hubbard* v. *Concord*, 35 N. H. 52. While in many and perhaps in most suits that might be brought for neglect by a town to keep a guide-post in suitable repair, the nature of the lack of repair alleged would probably be such that if it existed the town must have had knowledge of it and an opportunity to make repair, it does not follow that the plaintiff in such a case could recover upon proof that at a single instant of time a guide-board or post was not in suitable repair. A post blown down by a tornado, destroyed by fire, or cut down through malicious mischief could not have been intended to afford ground for suit until the town had had notice, actual, or constructive from lapse of time, and a reasonable opportunity to make repair.

A reasonable time determined by the verdict of a jury in a particular case is equally embraced within the term "any period of time," as a fixed period by law determined to be reasonable in all cases.

"The time and circumstances in which a statute was made, and the history of legislation on the subject, are competent evidence of legislative intent. . . . 'Such construction ought to be put upon a statute as may best answer the intention which the makers had in view. . . . The intention . . . is sometimes to be collected from the cause or necessity of making a statute; at other times from other circumstances. Whenever this can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seem contrary to the letter of the statute. . . . A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter. . . . A thing which is within the letter of a statute is not within the statute unless it be within the intention of the makers.' Bac. Abr., Statute (I) 5." *Opinion of the Justices*, 66 N. H. 629, 645, 657. The object of a statute is to be regarded and all parts of the statute brought together to ascertain its meaning. *Barker* v. *Warren*, 46 N. H. 124. The history of legislation upon the subject, the circumstances under which the several statutes were passed, are properly considered in connection with the words of the statute, the

context, etc., in order to ascertain the intention of the legislature. *Rich* v. *Flanders*, 39 N. H. 304, 312.

Since 1792 it has been thought necessary " for the accommodation of the citizens of this state, as well as for other persons who may have occasion to travel in and through the same," that a " monument or·post guide " should be erected and maintained at the intersection of public highways, which should give information of the direction of and distances over the intersecting ways. The act of December 17, 1792, on this subject remained in force without change until the Revised Statutes in 1842. Laws, *ed.* 1797, *p.* 329; *ed.* 1805, *p.* 335; *ed.* 1815, *p.* 393; *ed.* 1830, *p.* 584. This act prescribed in detail the character of the post guide and · placed the duty of erection and maintenance upon the selectmen, in the absence of a committee elected by the town for the performance of that duty, and prescribed a fine of twenty shillings as the penalty for neglect of this duty for the space of any four months.

In the Revised Statutes of 1842, the original law was greatly condensed and materially altered. The towns were made liable to a penalty of one dollar for each month's neglect of the duty of guide-post maintenance directly imposed upon them by the chapter, the penalty being recoverable by any one who might sue therefor. In 1845, or early in 1846, numerous suits were brought against various towns, clearly as matter of speculation, to recover the penalty provided by the guide-post law in that revision. These suits promised, if successful, according to the claims of the plaintiffs and what seems to have been the general interpretation of the statute at the time the suits were brought, to draw large sums from the delinquent towns. The towns made common defence, and the controversy attracted much attention. Bell's Bench and Bar of N. H. 191, 216. The object of the penal provisions of the law — the due performance of the duty of guide-board maintenance by towns — had largely failed. These provisions seemed destined to result, in practice, merely in the production of large revenues to industrious prosecutors, at the expense of the towns, without advantage to the public accommodation. It was also considered that there might be highway junctions where the travel was inconsiderable or the route plain, at which, for these or other reasons, the public accommodation did not require direction for travel and at which, therefore, the maintenance of guide-posts was unnecessary.

The suits brought under the Revised Statutes were not determined until December term, 1847. The docket entries show that *Roberts* v. *Rochester* and *Flanders* v. *Atkinson*, which is probably the case referred to by Judge *Woods* (*Clark* v. *Lisbon*, 19 N. H. 286, 288) as *Flanders* v. *Plaistow* was entered neither party, were decided at that term. While matters were in this

situation, and without the light of the construction put upon the Revised Statutes in the decision of those cases, chapter 62 of the Revised Statutes was repealed and a new act passed. Laws 1846, c. 330. The mischief of the old statute, as it was understood, and the purpose of the new appear from its provisions.

Towns were authorized by vote to dispense with a guide-board or post at any place or places where they believed the same unnecessary, and their liability in a suit for a penalty was made to depend upon the following: "*Provided*, however, that no such suit shall be commenced until the person proposing to bring such suit shall have given to one of the selectmen of such town notice in writing of his intention to commence such action, at least twenty days prior thereto; and if the said selectmen shall cause to be erected or repaired such guide-board or guide-post before the expiration of said twenty days, no such action shall be sustained." Laws 1846, c. 330, s. 2. The contemplation of the statute being that upon notice of intention to bring suit the duty would be performed and thereby the public accommodation would be subserved, and the act would accomplish its purpose instead of furnishing revenue to prosecutors at the expense of towns.

The statute of 1846 is clear. The only subject for inquiry is whether any change has since been made. Except the act of February 17, 1897 (Laws 1897, c. 17), there has been no legislation upon the subject since 1846, and consequently no change in the law unless made in the revisions of 1867, 1878, and 1891. The law of 1897 does not appear to have been intended as a declaratory statute, and does not affect pending suits. P. S., c. 2, s. 36; *Dow* v. *Norris*, 4 N. H. 16. General Laws, c. 77, ss. 1, 2, and c. 266, s. 7, are identical with General Statutes, c. 71, ss, 1, 2, and c. 248, s. 7, while the corresponding provisions of the Public Statutes under consideration contain only verbal modifications of style not affecting the sense. Comm'rs' Rep. P. S., c. 77, ss. 1, 2; *Ib.*, c. 256, s. 7. So that the question is whether in the General Statutes any alteration of the law of 1846 was intended. The General Statutes were the first general revision after 1846. The Compiled Statutes of 1853 were strictly a compilation, containing the guide-board act of 1846 in identical language. C. S., c. 66. The material difference between the law of 1846 and ss. 1, 2, c. 71, of the General Statutes, relating to guide-boards, prescribing the duty and imposing the penalty, is that in the General Statutes the proviso of s. 2, c. 330, Laws 1846, that no action shall be commenced until after twenty days' notice of an intention to begin the same, is entirely omitted from the guide-board chapter. No reason appears why the legislature should have thought it wise to return to the statutory situation existing under the Revised Statutes, and again to create the mis-

chief which occasioned the act of 1846. On the other hand, the theory of that law appears to have met with approval.

The maintenance of a suitable pound was early placed upon towns. Act of February 9, 1791 (Laws, *ed.* 1797, *p.* 335); Laws, *ed.* 1830, *p.* 204; R. S., *c.* 137, *s.* 14. That act contained a penalty for the benefit of any one who might sue therefor, for neglect of the town in performance of the duty imposed, of thirty dollars for each year's neglect. *Pike* v. *Madbury,* 12 N. H. 262. The provision for notice introduced into the guide-board statute in 1846, in its adaptation to effectuate the intent of the penal provisions of the statute, viz., to secure the performance of the duty rather than to furnish an income to prosecutors, met with legislative recognition in 1848 (Laws 1848, *c.* 702), when precisely similar provisions in almost identical language were incorporated into the statute relating to pounds and enacted with reference to the duty of selectmen to provide standard weights and measures, which had also been the subject of litigation. *Pike* v. *Jenkins,* 12 N. H. 255.

In the compilation of 1853, this provision is found, not in the chapter relating to pounds (*c.* 143, *s.* 14), but in the chapter relating to weights and measures, reference being made from the one to the other. C. S., *p.* 305. In the General Statutes, the compilers undertook to make this provision general in all suits for penalties against towns or town officers where it could be applied. The provision was therefore placed in the general chapter upon fines and penalties, adding it to *s.* 3, *c.* 211 of the Revised Statutes, and forming what is now practically *s.* 7, *c.* 257 of the Public Statutes.

The provision originating in the guide-board statute, copied into the statute as to pounds, and meeting with such approval that the legislature in 1867 attempted to give it general application, the presumption is strong that the legislature did not intend to strike it from the guide-board statute where it originated. The circumstances under which the act passed show the understanding of the legislature that the proviso was stricken from the guide-board statute merely because it was included in the general provision. No other good reason can be or is suggested, and the Commissioners' Reports show precisely what took place. The commissioners' first report upon the General Statutes contains the proviso as to notice precisely as in the law of 1846. Comm'rs' Rep. G. S., *c.* 72, *s.* 2. The chapter on the guide-board subject was, as is indicated in their report, the law of 1846 with merely verbal changes. In submitting their report, the commissioners say (*p.* IV) they " are not without apprehension that . . . in some instances provisions have been repeated, or omitted," and suggest that if any errors are by them discovered of sufficient importance, they will direct attention thereto in a supple-

mentary report. Accordingly, in a supplementary report they " solicit the attention of the legislature to such omissions, repetitions, discrepancies, defects, and errors in the printed bill [their first report] as a careful examination thereof and a comparison of its provisions with existing statutes have served to discover." On page 6 of this supplemental report they suggest the erasure of all of the section (*s.* 2, *c.* 72) after " therefore " in the fourth line,— that is, the entire provision as to notice. This clause was not a discrepancy, defect, or error ascertainable by comparison with the entire bill or existing statute. It was an exact, concise statement of existing law; and the only ground, conformably with the reasons given for their suggestions contained in their supplemental report, upon which the commissioners could have made the suggestion of erasure, is that they understood the same provision was elsewhere contained in the law. The legislature in adopting the suggestion had the same view. No reason can be given why the provision as to notice should be stricken from the guide-board law, in which it originated, and retained in the pound law, into which it was copied. The form chosen in the General Statutes was general, and if the attempt to make general application of a provision repeals its application to the law as to which it was originally enacted, the intent of the legislature is defeated. It is clear that the commissioners understood the general provision now included in P. S., *c.* 277, *s.* 7, applied to prosecutions for a penalty under the guide-board statute. This is the precise question under consideration; and the opinion of the commissioners, communicated to the legislature in advance and upon which they acted, is entitled to great weight upon the question of what the legislature meant by the words used.

After the enactment of the bill known as the General Statutes, the same committee who prepared the revision were instructed to " correct the . . . marginal notes, references, and citations, . . . adding thereto such as are rendered necessary and proper by the amendments of the legislature, prepare a full and complete digested index," etc. Laws 1867, *c.* 15, *s.* 1. In performance of this work, precisely as the compilers of the laws of 1853, under the law as to pounds, called attention to the provision requiring notice before suit, contained in another part of that volume (C. S., *p.* 305), the revisers of the General Statutes attempted by a marginal reference under the guide-board law to call attention to the part of the volume to which the provision as to notice had been transferred. G. S., *c.* 71, *s.* 2. No other explanation of the letters " ccxlix, 8 " can be given except that it is an attempt to refer the reader to *c.* 248, *s.* 7, where the provision was placed, but to which, through a clerical blunder, due perhaps to the fact that *c.* 249 of the report is *c.* 248 of the statutes, or to a typographical error, the reference is incorrectly

stated. In the index, under the head of guide-boards, we are referred to both sections, the one where the penalty is granted and the one where the limitation of notice is imposed, precisely as in the case of pounds. As bearing with some, though perhaps slight, weight on the question of contemporary construction, in the next compilation (the General Laws) this section, under the head of guide-boards, is indexed "no action to be brought for such penalty until twenty days after notice." Considering all the competent evidence, it is clear the legislature struck this provision from the guide-board statute because they understood the subject was covered by the general provision; from which it follows that the general provision requiring notice in certain suits for penalties was intended to control guide-board suits unless the language used so clearly excludes them that the evidence thereby furnished outweighs the other evidence on the question of intention. It might be clear that a provision was stricken out because understood to be elsewhere enacted; but if upon examination of the law no such provision was found, no principle of construction could restore what was deliberately repealed. Such is not the present case.

It is said that the first part of this section,—"Whenever a fine or penalty is imposed for neglect for any period of time, such neglect may be alleged to have begun at any specified time, and shall be reckoned from the time so alleged,"—when first adopted in the Revised Statutes (*c.* 211, *s.* 3), was merely the adoption into the statute of the doctrine of *Pike* v. *Madbury*, 12 N. H. 262, removing the embarrassment to the pleader which might occur under the contrary doctrine of *Fairbanks* v. *Antrim*, 2 N. H. 105. This may be conceded, and it may also be conceded that in the connection and under the circumstances then used in that revision, "any neglect for any period of time" refers only to such neglects as must continue a specified period of time to expose those guilty of them to the penalty; but the question now is: What did the legislature mean by the words in 1867, in the connection and with the context in which they used them? There appears to have been no judicial construction of the language which the legislature is presumed to have adopted. The statute is distinctively a penal one. Its provisions are to be construed strictly, — that is, strictly as against the plaintiff, liberally for the defendant. *Woodbury* v. *Thompson*, 3 N. H. 194, 197; *Wood* v. *Adams*, 35 N. H. 32, 36. "The rule requiring penal statutes to be construed strictly, means . . . in cases of doubtful construction, that interpretation should be adopted which restricts the operation and enforcement of the forfeiture." *Quimby* v. *Woodbury*, 63 N. H. 370, 373. Where the words are doubtful, that sense is to be adopted which best harmonizes with the context, and the apparent policy and objects of the legislature. *Fair-*

*banks* v. *Antrim*, 2 N. H. 105, 107; *Pike* v. *Jenkins*, 12 N. H. 255. An application of these rules would necessarily limit the class of cases included in the Revised Statutes, while it would extend the meaning in the General Statutes to give force and efficacy to the proviso. The intention of the legislature upon all the competent evidence being clear not to permit this class of suits to be brought without notice, we are not only not forbidden to give effect to that intention by technical rules for the construction of penal statutes, but those rules forbid us to limit the proviso by a narrow construction. The construction contended for is contrary to the plain intent of the legislature and against well understood rules.

The cases of penalties suggested by the plaintiff, wherein it is claimed a requirement of twenty days' notice would be an absurdity, such as neglect of selectmen to issue a warrant for an election (G. S., c. 35, s. 12), neglect of a moderator to take a poll of voters (G. S., c. 36, s. 4), neglect of a constable to perform his duties at an election (G. S., c. 36, s. 8), or for neglect of other officers to perform official acts (G. S., c. 111, s. 12; c. 120, s. 15; c. 128, s. 20), are in no sense cases of penalties for neglect extending over a period of time, but are penalties for neglect to perform official acts at the time they are lawfully to be performed; and if they could otherwise be included within the terms used, the absurdity thereby resulting, if such were the fact, would be competent and convincing evidence that they were not, and were not intended to be, so included. But no absurdity or inconvenience results in the present case, and the argument is without application. As the plaintiff's suit was begun without notice as required by law, it cannot be maintained. This result renders it unnecessary to consider the second question raised.

*Exception sustained : judgment for the defendants.*

CLARK, C. J., did not sit : the others concurred.