RATCLIFFE *v.* PULASKI TURNPIKE COMPANY.

Opinion delivered April 27, 1901.

TURNPIKE—EXCLUSIVENESS OF PRIVILEGES.—Where a county court, under the act of March 6, 1875, authorizing county courts to grant exclusive privileges for the construction of turnpikes, etc., granted to plaintiff the right to construct a turnpike and collect tolls thereon for a certain period, the county court cannot, during the life of plaintiff's franchise, open a parallel and competing public road which would largely divert travel from plaintiff's turnpike.

Appeal from Pulaski Chancery Court.

THOMAS B. MARTIN, Chancellor.

*John Fletcher* and *Dodge, Johnson, Carroll & Pemberton,* for appellants.

The turnpike company had no exclusive rights which were violated by the acts of appellants. Such a grant as that claimed by appellees would be monopoly within the prohibition of the constitution. Art. 2, § 19, Const. Ark. The maxim *sic utere,* etc., applies only in cases where an owner is attempting or doing that which will infringe a right of another which is in the nature of or equivalent to an easement over the servitude upon such owner's land. 12 Mass. 157; 13 Wend. 261; 3 B. & Ad. 871; 2 M. & W. 22; 4 Paige, 169; 12 Mass. 220; 5 Johns. 101. Nor could this action be maintained upon the ground that the motive of the defendants, in doing the acts complained of, was malicious, had the evidence shown such to be the case. 13 Wend. 261; 5 Johns. 101; 24 Pa. St. 308; 75 *id.* 467; 76 Pa. St. 191. The county court could not confer upon appellees the exclusive right claimed by it here. Since such right is not given expressly in the charter, the franchise will not be so extended by implication, as to make the right of appellee an exclusive one. 11 Pet. 420; 24 Mass. 344;

9 N. Y. 444; 11 Leigh, 42; 17 Conn. 454; 1 Barb. Ch. 547; 3 Sandf. Ch. 625; 3 Kent's Comm. 459 n.; Gr. Cruise, Title *Franchises,* § 29; 43 Ark. 193; 44 Ark. 185; *Cf.* Sand. & H. Dig., §§ 541, 3391; 44 Ark. 189; 36 Ark. 467; 4 S. W. 140, 141; 15 S. W. 782; 18 S. W. 626, 628; 45 S. W. 345, 347; 16 N. J. Eq. 366-372; 4 Stew. & Port. 260; 89 Ind. 290, 292, 295; 99 N. Y. 599. See *contra:* 1 Johns. Ch. 611; 5 *id.* 101; 3 Kent's Comm. 459. But see also: 11 Pet. 420, and cases *supra* overruling same.

*W. J. Terry, J. M. Moore* and *W. B. Smith,* for appellee.

The act of March 6, 1875, conferred plenary power in the county courts of the state to make contracts for the building of turnpikes. Appellee's rights under the grant of power from the county court, being based upon a valid consideration moving between the parties thereto, stands upon a different footing from a mere voluntary grant, and will be protected and upheld, though exclusive in its terms. 85 Am. Dec. 647; 61 Md. 41; 20 Ark. 561. The maxim *sic utere tuo ut non alienum laedas* applies to this case, and appellees will not be allowed to injure or destroy the franchise of appellees. 36 Ark. 470. Every citizen is presumed to be a party to the contract of the state for public improvements which are for their benefit. 20 Ark. 560; 3 Ired. Eq. 613. Appellants are attempting the construction of what would be a nuisance to appellee's franchise. Cooley, Const. Lim. 279; 1 Johns. Ch. 611; 5 *id.* 110; 2 Bl. Comm. 219; 16 N. J. Eq. 372; 65 Am. Dec. 538; Johns. Ch. 101; 2 Stew. 211; 3 Tenn. Ch. 369; 8 Humph. 342. A statutory grant of fees or perquisites carries with it an exclusive right to perform the services that earn them. 4 Edw. Ch. 258. While appellants have the right to use their own lands for a roadway for themselves, they cannot maintain thereupon even a *free* road for the general public, to the detriment of appellee's franchise. 42 Am. Dec. 716; 6 Cal. 590; 3 Ired. Eq. 613; 1 Johns. Ch. 611; *id.* 101; 3 Tenn. Ch. 396; 5 Johns. Ch. 111; Martin's Ch. Dec. 339. The fact that the shun-pike does not touch the road is immaterial. 5 Johns. Ch. 101; 3 Tenn. Ch. 396; Martin's Ch. Dec. 339. The right of eminent domain is reserved by the county, and appellee's franchise may be taken by its exercise, if deemed necessary. Const. art. 18, § 9; 16 N. J. Eq. 366; 40 Am. Dec. 705; 60 *id.* 143; 11 N. H. 19; Martin's Ch. Dec. 339. Appellee's franchise, being to do something which is not common right, is not a monopoly. 16 Wall. 36; 33 L. R. A. 536; 115 U. S. 674;

*Cf.* Const. art. 2, §§ 18, 19; 4 Bl. Comm. 159; Bac. Abr. "Prerogative" T. 4; 3 Inst. 181.    See also, generally, upon the case the opinion of the chancellor thereupon.    Martin's Ch. Dec. 339.

BUNN, C. J.    On the 18th day of April, 1885, in due course, the county court of Pulaski county, proceeding under the provisions of an act of the general assembly entitled "An act granting toll bridge and turnpike privileges," etc., approved March 6, 1875 (Acts 1874-5, p. 242), entered into a contract with the Pulaski Turnpike Company, for the construction of a turnpike over that portion of the Little Rock and Pine Bluff public road leading from Oakland cemetery in Little Rock across the Fourche Bayou, over the Iron Bridge belonging to the county, to the foot of Fourche Mountain; and in consideration of the construction of and the keeping the same in repair granted to said company the exclusive privilege of erecting and keeping a toll-gate on said turnpike and collecting tolls thereat, according to a schedule referred to in the order, for the period of 24 years from the time of the completion of the turnpike, and at the termination of which period all the right, title and interest of said company to revert to Pulaski county.    The turnpike was completed and received on August 1, 1885, and said company erected its toll-gate and began to collect its tolls, and has continued to do so until the present time, keeping said turnpike and bridge in repair according to its contract with the county court.

On the 27th May, 1897, the Thomas Manufacturing Company, operating its mills in the eastern part of the city of Little Rock, the Consumers' Oil Mill, Charles M. Newton, John F. Boyle, George Reichardt, Allen N. Johnson, administrator of the estate of R. W. Martin, deceased, and other landowners in the vicinity, petitioned the county court to open a public road, commencing at the northeast corner of the Consumers' Oil Mill, and running thence in a south-easterly direction to the intersection of the Brooks Bridge road, at the southeast corner of the southwest quarter of southwest quarter section 18, township 1 north, range 11 west.

The road was opened by order of the county court, but Mrs. Mary Taylor, who owned some of the land over which this new road was located, and was also the secretary and treasurer of the Pulaski Turnpike Company, took an appeal from this order of the county court to the circuit court of Pulaski county, and there moved for an order compelling the petitioners for the road to give

bond, which order was made, and, said petitioners declining to make the same, their petition was dismissed. In the meantime, on the 27th July, 1897, and some days after Mrs. Taylor had taken her appeal, and before the convening of the September term of the circuit court, one W. H. Hicks, a contractor of the county, acting, as is alleged, under the orders of the county court, entered upon the southeast quarter of the northeast quarter of section 13, township 1 north, range 12 west, across which tract the said new road had been laid out and attempted to be opened, and with teams, wagons, piling, pile-driver and other appliances began the work of erecting a bridge thereon across Fourche bayou, and refused to discontinue the work and leave the premises on notice and demand from the said Mary Taylor.

Thereupon, as secretary and treasurer of the said turnpike company, as well as the owner of said tract of land, she filed her bill in the Pulaski chancery court for an order restraining and enjoining the said Hicks and the county judge from prosecuting said work, and all the said parties, being before the court, were enjoined from proceeding further with the work of opening said road until the appeal aforesaid could be determined in the circuit court. Immediately thereafter all the material, tools and appliances aforesaid in charge of the said Hicks were moved from the lands aforesaid of Mary Taylor on the west side of the Little Rock, Mississippi River & Texas Railroad to the land of Mrs. Geraldine Miller on the east side of said railroad; and during the months of October, November and December of 1897 the said Hicks erected thereon across the main stream of Fourche bayou and the two branches thereof three bridges, all of which, excluding abutments, exceeded 60 feet in length, the material and building of which were paid for by the county; there being no road at the time leading to and over these bridges, they being in an enclosed field as alleged. Testimony was adduced going to show that it was the intention of the county judge and the others to change the direction of the contemplated road so as to cross upon these new bridges, thus avoiding Mrs. Taylor's land altogether. At all events, such would be the natural effect of the scheme. In the early part of August, 1898, the appellants, owners of land between the Consumers' Oil Mill, in the eastern part of Little Rock, on the Fourche Dam Turnpike, and the Brooks Bridge road, between sections 13 and 18 and 24 and 19, opened up a road 60 feet wide across their lands, and at the same time the defendants Henry Shepard, George

Hudson, Sandy McFarland and John Durrah, and 25 or 30 other citizens of the Sweet Home neighborhood commenced cutting from the Stockade hill on the Little Rock and Pine Bluff public road to the Brooks Bridge road a right of way 30 feet wide over the lands of the defendant Ratcliffe, which would connect with the southern terminus of said new road on the land of the defendants, Boyle, Reichardt, Newton, Consumers' Oil Mill Company, W. C. Ratcliffe and Geraldine Miller; and at the same time the people of the Sweet Home neighborhood were cutting said right of way from the Stockade hill to the Brooks Bridge, and were making the abutments to the three new bridges on the lands of Mrs. Miller, and were opening the road on the lands of the others named.

These were allegations in the bill, and were all substantially proved, so that there is no doubt but that the intention of the parties defendant to succeed in the opening of a road from the Oil Mill across the Fourche over said new bridge and beyond, and also to open a road from said new road to Stockade hill on the Little Rock and Pine Bluff public road, and that one of the objects, if not the principal object, of the same was to divert the travel on the public road south of Stockade hill from passing through the plaintiff's toll-gate to said new road to and from the city of Little Rock, or such would be the effect of it.

All the travel coming north on the Little Rock and Pine Bluff road to Stockade hill is necessarily compelled to pass over the Iron Bridge and through the toll-gate of plaintiffs, unless diverted by some new road; and all the travel passing through said toll-gate out of the city of Little Rock over said turnpike must necessarily pass by Stockade hill, and southward towards Sweet Home under existing conditions, but a road from Stockade hill northerly to connect with the Brooks Bridge road or the new road, both of which are in a general way parallel to the plaintiff's turnpike road, must necessarily have the effect of diverting much of the travel and patronage from plaintiff's turnpike road and toll-gate.

The county court, in consideration of the construction of the turnpike by the plaintiff—necessarily a work of great cost—and keeping the same in repair, granted plaintiff the exclusive privilege of collecting the stipulated tolls. The county court itself was forbidden by the very terms of the act under which it undertook to have this turnpike constructed by the plaintiff to open a competing road, or in any way to injure the plaintiff's franchise.

On the question of how far such grants extend, the authorities apparently differ, but the conflict is more apparent than real after all, and the difference grows out of the language and terms of the grants, whether they purport to confer mere privileges or exclusive privileges. Thus, in the leading case of *Charles River Bridge* v. *Warren Bridge,* 11 Peters, 420, in which it was held that the privilege cannot be extended by implication, but must be restricted to the language of the grant, the grant was not exclusive in terms. So, also, in the case of *Auburn & Cato Plank Road Co.* v. *Douglass,* 9 N. Y. 444, and in all the cases where restraining orders have been refused, so far as our researches go. The rule seems to be that, where the privileges granted are exclusive, and are for a valuable consideration, the matter assumes the nature of a contract between the government and the individual grantee, whose obligation cannot be impaired by the government; and, more still, the good faith of the state government is pledged, so to speak, to protect the grantees against the unlawful and injurious interference of all parties.

The county court is but an agency of the state government in such matters, and in this instance was clothed by the legislature with authority to fully and exclusively grant the privileges to the plaintiff. This grant of power does not in any manner interfere with the private ownership of adjacent property, or property in the vicinity, to use the same for the owner's benefit; but it does restrain the owner's use of his property for the benefit of the general public or third parties, in so far as such use may injure the franchise of the grantee, which carries with it exclusive privileges. That the opening of the road from Stockade hill to the Brooks Bridge road, or the new road opened, but which ceased to be a county road, whereby public travel could be diverted from plaintiff's turnpike, would greatly injure, if not destroy, plaintiff's franchise property, is conclusively shown by the evidence in the case, and the findings of chancellor are sustained, and his decree is affirmed.

We deem it unnecessary to go more at length into this discussion, as the chancellor has elaborately and ably discussed the question involved, and we understand his opinion will be published.*

Affirmed.

---

* See *Pulaski Turnpike Co.* v. *Pulaski County,* Martin's Ch. Dec. 339.