ARKANSAS STATE-HIGHWAY COMMISSION *v.* SOUTHWESTERN BELL TELEPHONE COMPANY.

4-7357                                              178 S. W. 2d 1002

Opinion delivered March 20, 1944.

*Neill Bohlinger*, for appellant.

*Downie & Downie*, for appellee.

SMITH, J. The parties to this litigation are the State Highway Commission, which was created by § 6478, Pope's Digest, and which is vested with all the powers and duties necessary, or proper, to enable it to carry out and execute the laws of the state relating to the state highways; and appellee, a corporation authorized to conduct a telephone business in this state, and clothed with the privileges conferred by § 4991, Pope's Digest.

The decree from which is this appeal was rendered upon the pleadings, which disclosed the following facts. The Highway Commission has the control and management of the bridge across the Arkansas River between the cities of Fort Smith and Van Buren, and the highway leading thereto. A flood in 1943 destroyed a portion of this highway leading to the bridge, and in order to provide for the vehicular and foot traffic on the highway the Commission is engaged in building a viaduct, or bridge structure, leading to the bridge across the river, which structure is designed to take the place of the portion of the highway washed away by the flood.

Appellee desires to have certain attachments placed in and on the new structure for the purpose of carrying its wires and other appurtenances necessary in its business. It insists that it has this right without paying the rental charge which the Commission demands, or any sum for such use.

The complaint of the telephone company and the answer of the Highway Commission present the question whether rents may be charged and payment thereof

required. Having first answered, the Highway Commission thereafter filed a demurrer, which was overruled; and the Commission electing to stand on its demurrer, has appealed from the decree of the court, which, after overruling the demurrer, enjoined the Commission from interfering with the telephone company in placing its telephone lines on and over the bridge.

The decision of the question here presented, that is, the right of the Commission to demand and collect rents for the use of the bridge, depends upon the construction and effect to be given to § 4991, Pope's Digest, which reads as follows:

"Any person or corporation organized by virtue of the laws of this state, or of any other state of the United States, or by virtue of the laws of the United States, for the purpose of transmitting intelligence by magnetic telegraph or telephone, or other system of transmitting intelligence, the equivalent thereof, which may be hereafter invented or discovered, may construct, operate and maintain such telegraph, telephone or other lines necessary for the speedy transmission of intelligence along and over the public highways and streets of the cities and towns of this state, or across and under the waters and over any lands or public works belonging to this state, and on and over the lands of private individuals, and upon, along, and parallel to any of the railroads or turnpikes of this state, and on and over the bridges, trestles or structures of said railroads; provided, the ordinary use of such public highways, streets, works, railroads, bridges, trestles or structures and turnpikes be not thereby obstructed, or the navigation of said waters impeded, and that just damages shall be paid to the owners of such lands, railroads and turnpikes, by reason of the occupation of said lands, railroad and turnpikes by said telegraph or telephone corporations. Act March 31, 1885, § 1, p. 176."

It may first be said that it was not alleged, and is not contended, that the telephone company will in any manner obstruct the use of the bridge for its intended

purposes. This could not be permitted or authorized, even though the rental demanded was paid.

The section quoted is the first section of act CVII of the Acts of 1885, p. 176, which is entitled, "An act granting certain privileges to and prescribing certain duties of telegraph and telephone companies, and for other purposes," and has never been amended since its passage. Under its provisions thousands of miles of telegraph and telephone lines have been erected along the highways of the state, without that right having been questioned or compensation for its exercise demanded, so far as the decisions of this court reflect.

The act was passed when the telephone and telegraph were in their infancy, and the act was intended, as it recites, to aid "the speedy transmission of intelligence along and over the public highways and streets of the cities and towns of this state, or across and under the waters and over any lands or public works belonging to this state, . . ." Now, this grant is made without any provision, or requirement imposed, that compensation shall be exacted, this, no doubt, for the reason that the speedy transmission of intelligence, thus to be provided, was, of itself, sufficient compensation. Having granted this right, which the title of the act designates a privilege, without requiring compensation for its exercise, the act proceeds to grant the right of eminent domain to construct telegraph and telephone lines "on and over the lands of private individuals, and upon, along, and parallel to any of the railroads or turnpikes of this state, and on and over the bridges, trestles or structures of said railroads," provided the ordinary use of such streets, railroads, etc., be not thereby obstructed. But the right of eminent domain as to property privately owned, may be exercised only by the payment of damages resulting from its exercise. In other words, no provision is made for payment for the use of highways, whereas that requirement is made as to the property owned privately, whether by an individual or a corporation.

Now, the act requires payment of damages to turnpikes, and while turnpikes are public highways, they are not highways of the state within the meaning of the act. We know historically that public roads were, in the early development of the state, improved by grants of franchises from the county courts to improve portions of the public highways, and that these franchises authorized the imposition and collection of tolls for the use of the turnpikes. *Darnell* v. *State,* 48 Ark. 321, 3 S. W. 365; *Ratcliffe* v. *Pulaski Turnpike Co.,* 69 Ark. 264, 63 S. W. 70.

As to the highways, a grant was made without charge or condition, except that the highways should not be obstructed. The General Assembly had the power to confer this right, and no other agency had, and the right was conferred without requirement of compensation for its exercise. Now, as to turnpikes and other property privately owned, the right of eminent domain was conferred, but its exercise was conditioned upon payment of damages resulting therefrom.

It will be noted that §§ 2 and 3 of act CVII of 1885, *supra,* which appear as §§ 4992 and 4993, Pope's Digest, state the procedure for condemning rights-of-way owned privately, but make no mention of compensation to be paid the state, and we will be required to read something into the statutes which the General Assembly did not insert, if we hold that compensation must be paid to the state, as in the case of privately owned property.

The Commission contends that to so construe this legislation as to exempt telegraph and telephone companies from paying damages for crossing or using state owned highways would offend against § 9 of art. 12 of the Constitution, which reads as follows:

"No property, nor right-of-way, shall be appropriated to the use of any corporation until full compensation therefor shall first be made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascer-

·tained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law.''

It is insisted that these provisions of the Constitution inhibit the grant of any use of the state's property except upon compensation paid by the way of damages for the taking and use, and that there is no distinction in this respect between public and private property.

The courts of Missouri have had occasion to consider this question. *State, ex inf., McKittrick, v. S. W. Bell Tel. Co.*, 92 S. W. 2d 612, 338 Mo. 617; *State v. Kansas City Pow. & L. Co.*, 105 S. W. 2d 1085, 232 Mo. App. 308; *State, ex rel., State Highway Com., v. Union Electric Co.*, 142 S. W. 2d 1099. All of these cases recognize the power of the General Assembly of the state to grant the free use of the state highways to utilities such as a telephone company.

In the first of these cases it was held by the Supreme Court *in banc* that: ''Statute permitting telephone company to construct telephone lines along, across, or under public highways held not violative of constitutional prohibition against grant of thing of value to corporation, in view of benefit to general public.'' In so holding the Supreme Court of Missouri quoted from the opinion of the Supreme Court of the United States in the case of *State of Georgia v. Trustees of Cincinnati So. Ry.*, 248 U. S. 26, 39 S. Ct. 14, 63 L. Ed. 104, the following declaration of law: ''A conveyance in aid of a public purpose from which great benefits are expected is not within the class of evils that the Constitution intended to prevent and in our opinion is not within the meaning of the word (gratuity) as it naturally would be understood.''

In the last of these cases, in an opinion by the St. Louis Court of Appeals, it was held, to quote the fourth headnote, that, ''The right of a public utility to place its electric transmission lines upon public highways and bridges is based on theory that public benefit to be derived from promotion of services rendered by public utilities warrants grant of privilege of placing their lines upon the highways, and thereby serves to take such grants outside class of grants prohibited by Constitu-

tion," and it was further held that: "Whether State Highway Commission should have the power to exact rental from a utility for the use of a bridge upon which electrical transmission lines are laid is for the Legislature and not for the courts."

Counsel for the Commission concedes that these cases are against his contention, but insists that they are not authority here, and should not be followed for the reason that the applicable provisions of the Constitution of Missouri are unlike those of our own. We do not agree. The Missouri Constitution provides, § 46, art. 4, that: "The General Assembly shall have no power to make any grant, or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever; provided, that this shall not be so construed as to prevent the grant of aid in a case of public calamity."

It will be observed that the Missouri Constitution, specifically mentions "public money or thing of value," while our own Constitution says only "no property." But conceding that "no property" refers to public as well as to private property, yet it is not more restrictive than the Constitution of Missouri on this subject.

We find it unnecessary, however, to go beyond our own cases for the proper construction of this statute, as our own cases are decisive of it. *St. Louis, I. M. & S. Ry. Co.* v. *Batesville & Winerva Tel. Co.*, 80 Ark. 499, 97 S. W. 660; *Ahrent* v. *Sprague*, 139 Ark. 416, 214 S. W. 68; *S. W. Bell Tel. Co.* v. *Biddle*, 186 Ark. 294, 54 S. W. 2d 57.

In the first of these cases it was said: "A telephone line is a public utility (Joyce on Electric Lines, § 275); and its public importance is recognized by clothing it with the power of eminent domain, and giving it the free use of the state's highways. Kirby's Digest, §§ 2934-2936, 2937, *et seq.*" The other two cases are to the same effect.

Counsel for the Commission cites cases from other jurisdictions to the effect that the construction of tele-

graph and telephone lines along public highways consti-
tutes an additional servitude upon the fee title of the
abutting owner, that, in other words, a public highway
occupies mere easement across privately owned lands,
and that the owner of the fee title is entitled to damages
for the additional burden put upon that easement by the
construction of utility lines. That holding accords with
the majority opinion in the case of *S. W. Bell Tel. Co.* v.
*Biddle*, 186 Ark. 294, 54 S. W. 2d 57, 687. But even so, that
case was a suit by an individual owner, and not a suit on
behalf of the state.

No contention is made that a bridge is not a part of
the highway. We have held that a bridge is a part of the
highway. *White River Bridge Co.* v. *Hurd*, 159 Ark. 652,
252 S. W. 917; *Lightle* v. *Blackwood*, 176 Ark. 674, 3 S. W.
2d 991. Indeed, as counsel for appellee says, a bridge is
a highway on stilts.

We conclude that the court properly overruled the
demurrer to appellant's complaint, and the decree is,
therefore, affirmed.

McFADDIN, J., (dissenting). My dissent herein is
because I believe that the majority is giving the act
involved (§ 4991, Pope's Digest) a *liberal* construction
instead of a *strict* construction. I will attempt to clarify
and elucidate my statement.

I. *The Act is a Legislative Grant, and is to be Strictly
Construed.*

The appellee claims the free right to have its wires
attached to the bridge (about 1600 feet long) now being
erected by the State Highway Commission, over, or lead-
ing to, the Arkansas River between the cities of Van
Buren and Ft. Smith. The appellee will thus be using
*free* the bridge built by the state, and will be saved the
expense of the erection of poles and towers and other
equipment necessary to elevate and run its wires over
the river. The appellee claims this free right under Act
No. 107 of 1885, the first section of which is now § 4991
of Pope's Digest, and which is referred to hereinafter
as "The Act."

In 59 C. J. 1122 the rule is stated: "As a general rule legislative grants must be construed strictly in favor of the public and most strongly against the grantee, and whatever is not granted in clear and explicit terms is withheld . . . These rules have been held applicable to legislative grants of property, rights, or privileges."

And in Sutherland on Statutory Construction, 3rd Ed., vol. 3, § 6402 it is said: "Traditionally, legislative grants of rights, powers, privileges and immunities have been given a strict interpretation against the claims of the grantee."

And in § 6502 of the same volume the rule is stated: "The general rule, then, is that statutes granting corporate powers, rights, privileges and immunities are strictly interpreted in favor of the public and against the corporation. This policy of strictly limiting corporate activities achieves the dual protection of the state, represented by the public dealing with or affected by the corporation, on the one hand, and the rights of the shareholders on the other. Consistent with the general rule that all legislative grants are interpreted strictly against the grantees the rule is of decisive importance in a limited number of situations, of which the following are most common: (1) Where it is contended that the state has granted away its police power over the corporation. (2) Where it is claimed that the corporation is exempted from the taxing power of the state. (3) Where the corporation claims other exclusive rights and privileges which constitute a monopoly. (4) Where it is asserted that the corporation is empowered to impose upon the commonlaw or statutory rights of others. (5) Where the corporation seeks to extend a gratuitous contribution or gift from the government."

And in Crawford on Statutory Construction, § 245, the rule is stated: "Legislative grants—whether they be of property, rights or privileges, or to municipal or private corporations, or individuals—must be strictly construed against the grantee and in favor of the grantor —the government or the public. Where there is any doubt, it must be resolved in favor of the public. Nothing,

therefore, will pass by virtue of the grant except what is given in clear and explicit terms."

The rule of strict construction in Legislative grants was recognized in the famous case of *Charles River Bridge* v. *Warren Bridge,* 36 U. S. 420, 9 L. Ed. 773, decided by Chief Justice TANEY in 1837. This court has recognized this rule of strict construction in several cases. *El Dorado* v. *Coats,* 175 Ark. 289, 299 S. W. 355; *Citizens Pipe Line Co.* v. *Twin City Pipe Line Co.,* 178 Ark. 309, 10 S. W. 2d 493. So there is no need to labor the point further.

II. *The Definition of Strict Construction.*

Having thus shown that the act is to be strictly construed, if becomes necessary to see what is strict construction. In Black's Law Dictionary, 3rd Ed., p. 413, strict construction is defined as follows: "Strict (or literal) construction is construction of a statute or other instrument according to its letter, which recognizes nothing that is not expressed, takes the language used in its exact and technical meaning, and admits no equitable considerations or implications. *Barber Asphalt Paving Co.* v. *Watt,* 51 La. Ann. 1345, 26 S. 70; *Stanyan* v. *Peterborough,* 69 N. H. 372, 46 A. 191; *Bullington* v. *Lowe,* 94 Okla. 234, 221 Pac. 502; *Warner* v. *King,* 267 Ill. 82, 107 N. E. 837." See, also, *Priest* v. *Capitain,* 236 Mo. 446, 139 S. W. 2d 205, where the same definition is approved.

In Crawford on Statutory Construction, § 238 it is stated: "If a statute is to be strictly construed, nothing should be included within its scope that does not come clearly within the meaning of the language used. Its language must be given its exact and technical meaning, with no extension on account of implications or equitable considerations; or, as has been aptly asserted, its operation must be confined to cases coming clearly within the letter of the statute as well as within its spirit or reason. Or stated perhaps more concisely, it is the close and conservative adherence to the literal or textual interpretation."

### III. *Analysis of the Act.*

Having thus demonstrated that the act involved here is to be strictly construed, and having shown exactly what is meant by strict construction, I now proceed to analyze the act (which is § 4991 of Pope's Digest) and to interpret and weigh its grants by this rule of strict construction. By this section of the Digest appellee is given the right to construct and maintain its lines in any one of six situations. I list·them in the order listed in the statute and in the language of the statute, to-wit:

(1) "Along and over the public highways" (including streets of cities).

(2) "Across and under the waters."

(3) "Over any lands or public works belonging to this State."

(4) "On and over the lands of private individuals."

(5) "Along . . . railroads and turn pikes."

(6) "On and over bridges, trestles, or structures of said railroads."

Now unless the free right claimed by the appellee can be found in one of these six situations, then it does not exist; and such claimed free right must be found in the literal language—not in any expanded interpretation. For the purposes of clarity I desire to consider the items (*supra*) in the order six, five, and four and then items one, two, and three.

The sixth item above ("on and over bridges . . . or railroads") is the only item that mentions *"bridges,"* so this item is first considered. It will be observed that the *"bridges"* mentioned in this item are *bridges of railroads* and are not bridges built and owned by the state as in the case at bar. So the sixth item cannot support the contention of the appellee because the sixth item does not refer to the type of bridges involved in this suit.

But since *"bridges"* were specifically mentioned in the sixth item above, and not mentioned in any other item, it necessarily follows that, by strict construction, *"bridges"* cannot be implied into any of the other items;

because of the rule of construction that the mentioning of *bridges* in one place and the omission to mention in another place in the statute is a legislative refusal to include *bridges* in any other item. This rule of construction is an application of the rule of "express mention and implied exclusion" in accordance with the latin maxim *"expressio unius est exclusio alterius,"* see 59 C. J. 984 and 25 R. C. L. 981. So I contend that the only bridges over which the telephone lines may run, under this statute, are *railroad bridges*—not highway bridges built and owned by the state.

The fifth item ("along . . . railroads and turn-pikes") could not apply, because there is no allegation in this case about railroads or turn pikes. Likewise the fourth item ("on and over lands of private individuals") does not apply here because, (a) no private individuals are involved, and (b) even if this item did apply there would have to be compensation under the provision of the same statute.

Coming then to the first item ("along and over the public highways"), the majority says that this item justifies the appellee, since the bridge in question is a part of the public highway system of Arkansas, and is, as the majority says, "a highway on stilts." But that statement and holding of the majority is answered by the well known fact that in 1885 (when the act here involved was passed) the state had no bridges; so the Legislature could not have intended bridges to be included in the words "public highway" when the state at that time did not have any bridges. It was over forty years after the passage of this act before the state began the construction of bridges over navigable streams. For the majority to say that the words, "public highways," as used in 1885, include the words, "public bridges" as fixed by legislative enactment forty years later is certainly to expand the construction of the Act of 1885. In other words the majority is giving the act a liberal construction as opposed to a strict construction. Here is how Black's Law Dictionary, 3rd Ed., p. 413 defines liberal construction: "Liberal (or equitable) construction, on the other hand,

expands the meaning of the statute to meet cases which are clearly within the spirit or reason of the law, or within the evil which it was designed to remedy, provided such an interpretation is not inconsistent with the language used; it resolves all reasonable doubts in favor of the applicability of the statute to the particular case."

When the majority tries to include "*public bridges*" in the words "public highways" in this act, then, to my way of thinking, the majority is clearly giving the statute a liberal construction which is the error that I complain of.

Likewise and for the same reason fatal to item one, I submit that item two of the statute ("across and under the waters") and item three of the statute ("over any lands or public works belonging to this state") must each be interpreted in the light of such matters as were in contemplation of the Legislature in 1885 when the act was passed; and at that time the state had no public bridges.

In short, the Act of 1885 must not be construed now in the light of present day enlarged conditions to take away from the state and the public, and give to a corporation, rights which were not granted. The two Arkansas cases (cited before, *El Dorado* v. *Coats*, and *Citizens Pipe Line Co.* against *Twin City Pipe Line Co.*) show how this court heretofore strictly construed grants. I believe these cases should be applied to the case at bar.

Therefore I respectfully dissent from the majority, because, according to my views, the grant to the appellee must be strictly construed rather than liberally construed, as I think the majority has done.