**STATE OF ARKANSAS ex rel. ATTY. GEN. by SWITZER, Special Counsel**

v.

**TENNESSEE GAS TRANSMISSION CO. et al.**

No. 2738.

United States District Court, E. D. Arkansas, W. D. April 23, 1954.

Ovid T. Switzer, Crossett, Ark., Catlett & Henderson, Little Rock, Ark., for plaintiff.

Wynn, Hafter, Lake & Tindall, Greenville, Miss., Ohmer C. Burnside, Lake Village, Ark., House, Moses & Holmes, Blake Downie, Little Rock, Ark., for defendants.

LEMLEY, District Judge.

This cause is before the Court upon the question of whether or not it was properly removed from the Chancery Court of Chicot County, Arkansas, wherein it was originally filed, on the alleged ground that the plaintiff's complaint and the exhibit thereto disclose the existence of a substantial federal question. Said jurisdictional question, which was raised by the Court on its own motion, has been submitted upon written briefs.

The State of Arkansas brought this action against the defendants, Tennessee Gas Transmission Company, Arkansas Power & Light Company, and Southwestern Bell Telephone Company, to recover from the latter reasonable rentals for the use of that portion of the bridge over the Mississippi River connecting Washington County, Mississippi, and Chicot County, Arkansas, which belongs to the State of Arkansas for the support of their respective facilities and to compel said defendants to pay reasonable rentals for such use of such portion of the bridge in the future. Within apt time after the commencement of the action in the state court the defendants removed it here upon the theory that the plaintiff's claim or cause of action was based upon and required a construction of the Act of June 14, 1938, 52 Stat. 681, under the authority of which the bridge, popularly known as the Greenville Bridge was built [1]. No contention is here made

1. The Act of June 14, 1938, authorized the City of Greenville, Mississippi, to construct a toll bridge across the Mississippi River in conformity with the provisions of the Bridge Act of March 23, 1906, 34 Stat. 84, 33 U.S.C.A. §§ 491–498; the enabling act authorized the City to build the bridge, and in connection therewith

that this Court has jurisdiction of this cause by reason of diversity of citizenship.

As indicated, the construction of the Greenville Bridge was authorized in June of 1938. Subsequent to that time the City of Greenville obtained necessary easements and rights of way from interested parties, including the State of Arkansas, raised money to build the bridge by the issuance of revenue bonds and otherwise; and built the bridge, which was completed in 1940 and was operated as a toll bridge for a number of years thereafter. It appears that prior to 1944 the City entered into contracts with the Southwestern Bell Telephone Company, the Arkansas Power and Light Company, and the assignor of the Tennessee Gas Transmission Company under the terms of which they were permitted for stipulated annual rentals to use portions of the bridge as supports for their respective facilities. Subsequent to 1944 the bridge was made a free bridge as far as vehicular and pedestrian traffic were concerned, but the utilities above referred to continued to pay and are now paying to the City of Greenville rentals for the use which they are making of the structure.

The Mississippi River is the boundary line between the States of Arkansas and Mississippi, and that portion of the bridge lying west of the middle of the channel of the River is located within the State of Arkansas. In November of 1943 the Court of Appeals for this Circuit in the case of Miller v. City of Greenville, 8 Cir., 138 F.2d 712, held that the portion of the bridge which was located in Arkansas was subject to taxation by the State of Arkansas and by Chicot County[2]. On December 12, 1944, the City of Greenville conveyed to the State of Arkansas all that portion of the bridge lying within the State of Arkansas, together with the bridge right-of-way and easement theretofore granted to the City by the State. The deed recited the enactment of the Act of June 14, 1938, the steps taken by the City pursuant to said Act, the desire of the City to render the bridge free of toll at the earliest possible date, the fact that the Mississippi portion of the bridge had been made exempt from taxation by certain statutes of the legislature of that State, the fact that it was recognized by the City and by the State of Arkansas that the bridge was mutually beneficial to the citizens of both states as well as to the people of the United States generally, the fact that the State of Arkansas was asserting a tax claim for the years 1940–1944 amounting to a very large sum of money, which claim the City was willing to settle for $35,000, but was desirous of relieving the bridge of similar claims in the future by conveying to the State that portion of the bridge lying within it, and the fact that it was agreeable to the State to accept such a conveyance and to render the bridge thereafter immune to taxation in Arkansas "so that the same may become free of toll or other charge to general highway traffic at the earliest practicable date". The deed specifically recites that its purpose was to promote the intent of Congress that the bridge should be free of toll as soon as possible.

to obtain necessary easements and rights of way, employing, if necessary, the power of eminent domain; and the City was further authorized to [§ 3] "fix and charge tolls for transit over such bridge," the rates of toll so fixed were to be the legal rates until changed by the Secretary of War. Section 4 of the Act provided that the tolls should be so adjusted as to provide a fund sufficient to pay for the reasonable cost of maintaining, repairing, and operating the bridge and its approaches, and to "provide a sinking fund sufficient to amortize the cost of such bridge and its approaches, including reasonable interest and financing cost, as soon as possible, under reasonable charges, but within a period of not to exceed forty years from the completion thereof". Said section further provided that when a sufficient sinking fund had been established, the bridge should be maintained and operated free of tolls.

2. The opinion of the Court of Appeals gives a much more detailed history of the financing and construction of the Greenville Bridge than we have undertaken to set out in this memorandum.

While the deed from the City to the State conveyed to the latter the physical structure of that portion of the bridge lying west of the thread of the River, it should be noted that the City specifically reserved the right to charge and regulate tolls, together with the right and responsibility of maintaining and operating the entire bridge; the State of Arkansas was specifically prohibited from collecting "any toll or * * * charge for the privilege of the public to cross said bridge or any portion thereof".

The plaintiff's complaint alleges that the defendants have erected and are maintaining their facilities upon the bridge without authority from the State of Arkansas, that each of them is indebted to the State of Arkansas "in some reasonable sum for the use of said property"; and "that defendants' continuing trespass constitutes and is an irreparable injury to the plaintiff, and that plaintiff has no adequate remedy at law". Plaintiff attached to its complaint as an exhibit a copy of the deed to it from the City of Greenville, containing the recitals above mentioned.

After studying the record before us and the briefs of the parties, we have concluded that said record presents no substantial federal question, and that since jurisdiction of this Court cannot be sustained upon the basis of diversity of citizenship, the case must be remanded to the state court.

■ It is, of course, true that the claim of the plaintiff is based upon the Act of Congress of June 14, 1938, in the remote sense that had said statute not been enacted, the bridge would never have been built, and there would have been no occasion for this litigation. Miller v. City of Greenville, Mississippi, supra, 138 F.2d at page 717, and cases there cited; but this of itself does not establish that the plaintiff's claim or cause of action is based upon the Constitution or laws of the United States so as to give this Court jurisdiction. Gully v. First National Bank In Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70. It is

well settled that: "In order to confer jurisdiction on the ground of a federal question involved there must be a real and substantial dispute respecting the validity, construction and effect of laws, or the Constitution, of the United States, upon the determination of which the result of the suit depends. Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205. A claimed federal question obviously without merit is not substantial and will not support federal jurisdiction. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152." Miller v. City of Greenville, supra, 138 F.2d at page 718.

■ As we understand it, the defendants base their claim that a substantial federal question is involved in this case upon the proposition that the right of the City of Greenville to enter into contracts with the defendants for the use of the bridge, and the right of the State of Arkansas to exact charges for such use with respect to the portion of the bridge owned by it depend upon a construction of the statute above mentioned. More specifically, it seems to us that the defendants contend that the authority of the City to contract with the utilities must be found in the statute, and that unless it can be so found, the former's action was illegal, and that the State stands in no better position than its grantor; it is further contended that the authority of the City to sell the west half of the bridge to the State must also be found in said statute; and it is argued that in determining whether or not such authority existed substantial questions of statutory construction will be encountered. We cannot agree.

Granting that Congress might have provided, had it so desired, that the defendants could use the bridge rent free and might also have provided that the City could not sell any part of the bridge to the State of Arkansas or to any other person, corporation, or body politic, and granting further that the question of the right of the City to charge the defendants for the use of the bridge, and the question of the City's right to sell a por-

tion of the bridge to the State, are preliminary questions which must be decided in the light of the statute, still the answers to these questions seem so obvious as to render the latter insubstantial. We think it patent that the City had the right to enter into contracts with the utilities for the use of the bridge, and we think it also patent that the City had the right to sell the western portion of the bridge to the State of Arkansas, and that any contentions to the contrary which might be made by either side in this case would be obviously without merit. It should be noted in this connection that, as heretofore pointed out, the deed from the City shows on its face that the latter did not purport to transfer any portion of its franchise and did not surrender its right to maintain, control, and regulate the bridge, and to charge tolls for the use thereof; the City simply conveyed the west half of the physical structure of the bridge together with the bridge right-of-way and easement which it had theretofore obtained from the state, the express purpose of the conveyance being to free the Arkansas portion of the bridge from state and local taxation so as to hasten the day when the structure would be a "free bridge" in accordance with the express congressional intent set forth in Section 4 of the Act.

■ The contention of the defendants that the right of the City to enter into lease contracts with them, and to charge them for the use of the bridge involves a substantial question of federal statutory construction appears to be based upon the general rule that ordinarily the public has the right to travel free along highways and across bridges, and that the authority to assess tolls or charges for such passage must be found in a legislative enactment, and that such enactments are strictly construed. That such is the law generally cannot be doubted. 25 Am.Jur. "Highways", § 163; Slayton v. Crittenden County, D.C.Ark., 284 F. 858, 866. But the obvious and fatal difficulty with this argument is that the defendants here are not travelers; they are public utility corporations which are employing portions of the bridge structure as supports for their facilities. The bridge was obviously not constructed for the purpose of providing such supports, although it is apparently adapted thereto. We know of no rule of law which requires a municipality, a bridge district, or a private toll bridge company in the absence of a statute to allow a public utility free use of a bridge for laying of its pipes, erecting its towers, or stringing its lines. Had Congress intended to permit public utilities to have the free use of the Greenville Bridge for the purposes above outlined, it seems clear to us that it would have said so. Cf. Ark. State Highway Comm. v. Southwestern Bell Telephone Co., 206 Ark. 1099, 178 S.W.2d 1002.

Nor do we think that the right of the City to permit the utilities to make use of the bridge, regardless of terms, involves any substantial question of statutory construction. The Act authorizing the construction of the bridge recites in its first section that it was enacted to "promote interstate commerce, improve the Postal Service, and provide for military and other purposes". Of course, the presence of the defendants' facilities does not affect the Postal Service one way or another; and it is quite easy to see how such presence tends to facilitate interstate commerce and promote the national defense. Thus, their presence is in accord with two of the three express purposes of Congress and does not conflict with the other. As stated, the 1938 Act refers to the general bridge statute of 1906, and a reading of that statute makes it clear that in regulating the construction of bridges over navigable rivers Congress was primarily concerned with the protection of navigation, and it has not even been suggested in the instant case that the presence of the facilities in question tends to interfere with navigation on the Mississippi River. Moreover, in Sioux City, Iowa v. Missouri Valley Pipe Line Co., D.C.Iowa, 46 F.2d 819, it was held that a railroad company which owned a bridge over the Missouri River between Nebraska and Iowa, which had been constructed

under authority of a federal statute, had the right to lease a portion of its right of way and bridge to a pipe line company for the laying of its pipes. See in this connection the annotation in 94 A.L. R. 522, et seq., entitled "Right of Railroad Company To Use or Grant Use of Land in Right of Way for Other Than Railroad Purpose".

Neither do we feel that there can be any reasonable doubt, based upon the Act of June 14, 1938, or upon the Act of March 23, 1906, of the right of the City to convey to the State of Arkansas the portion of the bridge lying to the west of the channel of the River. As we have pointed out, it was the desire of Congress that the bridge should be made a free bridge as soon as possible, and the rendering of the Arkansas portion of it tax free would be obviously conducive to that purpose. In the Miller case, supra, it was held that said portion of the bridge was subject to state taxation, and it is at least fairly inferable that the occasion for the conveyance by the City to the State was the decision in the case just mentioned. It is inconceivable that Congress would have had any objection to a transfer of the western portion of the bridge under the circumstances above outlined, or that it ever intended to prohibit such a transfer. It should be noted in this connection that the conveyance to the State was executed almost ten years ago, and there has been no suggestion here that any agency of the federal government has ever taken any exception to that transaction, nor do we understand that any party to this litigation actually questions its validity.

Since we have concluded that the preliminary questions above referred to are insubstantial, and since the plaintiff specifically states that it is not relying upon the power of the City of Greenville to collect tolls, which was granted in the 1938 Act, as indeed it could not do since said power did not pass to the State under the deed from the City, but is relying solely upon its proprietary interest in the bridge and its ownership of the underlying land, the basic controversy between the parties centers around four questions: First, did the City in entering into its contracts with the defendants exceed the limits of the right-of-way grant from the State to the City. Second, in view of the fact that the original contracts were entered into between the City and the defendants prior to the former's deed to the State, did the latter take subject to these contracts. Third, did the City after conveying to the State have any right to enlarge the rights of the Tennessee Gas Transmission Company over the portion of the bridge conveyed to the plaintiff, assuming that such was done. Finally, does the plaintiff in any event have any claim or cause of action against the Southwestern Bell Telephone Company or the Arkansas Power & Light Company in view of the respective provisions of Ark.Stats.1947, §§ 35–301 and 73–1801. See in connection with the last question Arkansas State Highway Commission v. Southwestern Bell Telephone Co., supra. All of these questions are purely of state law; none of them requires for its decision any construction of the Act of June 14, 1938, or of any other federal statute, or of the Constitution of the United States. Of course, with the answers to these questions this Court is not concerned.

Defendants argue that in passing upon the question of jurisdiction we are limited to a consideration of the complaint and the exhibit thereto, and that these documents show that the plaintiff's claim is based upon and requires a construction of the Act of June 14, 1938. Conceding, for present purposes at least, that we are so limited, we cannot agree with the defendants in their construction of those instruments. The only references to said Act which appear in the complaint and the exhibit are found in three recitals of the deed which refer to the passage of the Act, the action of the City taken pursuant thereto, and to the purpose of Congress to have the bridge operated free of tolls as soon as possible. The mere fact that this deed containing such recitals was attached to

the complaint as an exhibit is not, to our mind, sufficient to show that the plaintiff intended to rely upon the statute, except in the remote sense heretofore mentioned. The complaint itself simply alleges that the defendants have placed their facilities on the portion of the bridge owned by the plaintiff without authority from it, and that each of them owes the plaintiff a reasonable sum of money for the use of said property. This language is fully as consistent with the idea that the plaintiff is relying upon its proprietary interest in the bridge, rather than upon the statute, as it is with the defendants' contrary characterization of the plaintiff's claim.

No effort has been made in this opinion to discuss all of the cases cited by the defendants in their briefs; those cases have been considered, however, and while all of them are doubtless sound, none of them appears to us to be in point here. An order is today being entered remanding this cause to the state court.